UNITED STATES COURT OF INTERNATIONAL TRADE

---------------------------------------------------------------- X
                                                                :
**RIMCO, INC.**,                                             :

       **Plaintiff,**                                :

       *v.*                                            :      **Court No. 21-537**

**UNITED STATES OF AMERICA**,    :

       **Defendant.**
---------------------------------------------------------------- X

## COMPLAINT

Plaintiff Rimco, Inc. by its undersigned counsel for its Complaint in this matter does hereby state and allege as follows:

## CAUSE OF ACTION

1. Plaintiff commenced this action to challenge the denial of its protest against the assessment of charges on entries certain imported steel wheels in an aggregate amount of up to 688% *ad valorem*. For the reasons set forth herein, plaintiff asserts that these assessments, made by United States Customs and Border Protection ("CBP"), constitute unconstitutional "excessive fines" prohibited by the Eighth Amendment to the United States Constitution.

## JURISDICTION

2. All liquidated duties, taxes, and fees were paid prior to the commencement of this action. The action is timely filed within 180 days from the date of protest denial. This Court has jurisdiction over the action pursuant to 28 U.S.C. §1581(a).

3. In the alternative, this action having been commenced by the concurrent filing of a Summons and a Complaint, this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D) because this action arises from a law providing for the imposition

of duties other than for the purpose of raising revenue and because the cause of action relates to the administration and enforcement of matters covered by 28 U.S.C. § 1581(a) through (h).

## PARTIES

4. Plaintiff Rimco, Inc. headquartered in Neche, North Dakota, is the importer of record of the merchandise which is the subject of this case, consisting of certain steel truck wheels manufactured in the People's Republic of China. Rimco was assessed with, and paid the assessments made by Customs upon liquidation of the subject entries.

5. The United States is the federal defendant. The unconstitutional assessment was made by its agency, CBP, a component of the U.S. Department of Homeland Security ("DHS"), and was made at the direction of the U.S. Department of Commerce (the "Department" or "Commerce"), International Trade Administration ("ITA") in liquidation of plaintiff's entries of certain Steel Wheels from China.

## STATEMENT OF FACTS

### A. Countervailing Duties

6. The countervailing duty statute, 19 U.S.C. § 1671, *et seq.* which is the best evidence of its contents, provides for the imposition of a countervailing duty on imported merchandise which benefits from impermissible export, production, or other subsidies, where such merchandise has been determined by the United States International Trade Commission ("ITC") to have caused or threatened material injury to an industry in the United States producing a "like product."

7. Countervailing duties are calculated by the ITA. These duties are assessed on imported merchandise by CBP, a unit of DHS, acting at the direction of ITA.

8. ITA typically calculates the amount of countervailing duty to be assessed by issuing questionnaires to foreign governments, foreign producers, and foreign exporters, and by analyzing the responses to those questionnaires to calculate the net amount of countervailable subsidies conferred with respect to the production or exportation of the merchandise concerned.

9. The Tariff Act of 1930, as amended, 19 U.S.C. § 1671(a)(2), which is the best evidence of its contents, provides that where the statutory conditions are met, "a countervailing duty, in addition to any other duty imposed, equal to the amount of the net countervailable subsidy" shall be imposed on imported merchandise.

10. The Tariff Act of 1930, as amended, 19 U.S.C. § 1677(f)(2), which is the best evidence of its contents, further provides that "a countervailing duty is not required to be imposed under subsection (a) on a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States from a nonmarket economy country if the administering authority is unable to identify and measure subsidies provided by the government of the nonmarket economy country or a public entity within the territory of the nonmarket economy country because the economy of that country is essentially comprised of a single entity."

11. At times relevant to this Complaint, the Department had ordered suspension of liquidation of entries and directed CBP to collect provisional estimated countervailing duties, or had issued a Countervailing Duty Order, and directed CBP to collect definitive estimated countervailing duty deposits, in respect of *Certain Steel Wheels from the People's Republic of China. See* 84 Fed. Reg. 11744-11746, ("The *Certain Steel Wheels* Order").

12. On March 28, 2019, ITA published in the Federal Register its Final Affirmative Countervailing Duty Determination in the investigation of Certain Steel Wheels from the People's Republic of China. *See* 84 Fed. Reg. 11744-11746. The notice, which is the best evidence of its contents, indicates that, during its investigation, ITA had examined two mandatory respondents: Xiamen Sunrise Wheel Group. Ltd., and Zhejiang Jingu Co. Ltd. The notice states (*id.* at 84 Fed. Reg. 11744):

> Commerce relied on 'facts otherwise available' including adverse facts available ("AFA"), for several findings in the Preliminary Determination. For this final determination, we are basing the countervailing duty (CVD) rates for Xiamen Sunrise Wheel Group Co., Ltd. (Xiamen Sunrise) and Zhejiang Jingu Company Limited (Zhejiang Jingu) on facts otherwise available, with an adverse inference, pursuant to sections 776(a) and (b) of the Act."

13. In its March 28, 2019 Federal Register notice, ITA established the final estimated countervailable subsidy rates in respect of Certain Steel Wheels from the People's Republic of China:

| | |
|---|---|
| Xiamen Sunrise Wheel Group Ltd. | 457.10% |
| Zhejiang Jingu Co. Ltd. | 457.10% |
| All Others | 457.10% |

14. In making its final determination in the countervailing duty investigation of *Certain Steel Wheels from the People's Republic of China*, ITA, on information and belief, made its determination on the basis of adverse inferences, in accordance with Section 776 of the Tariff Act of 1930, 19 U.S.C. §1677e, which is the best evidence of its contents. In particular, Section 776e(b), which is the best evidence of its contents, provides that:

**(b)Adverse inferences**

(1)In general

If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle—

    (A) may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available; and

    (B) is not required to determine, or make any adjustments to, a countervailable subsidy rate or weighted average dumping margin based on any assumptions about information the interested party would have provided if the interested party had complied with the request for information.

15. Section 776e(e)(3) of the Tariff Act of 1930, as amended by the Trade Preferences Extension Act of 2015 further provides at 19 U.S.C. § 1677e(e) as follows:

    (3) No obligation to make certain estimates or address certain claims

    If the administering authority uses an adverse inference under subsection (b)(1)(A) in selecting among the facts otherwise available, the administering authority is not required, for purposes of subsection (c) or for any other purpose—

        (A) to estimate what the countervailable subsidy rate or dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated; or
        (B) to demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party.

    On information and belief, in setting the final affirmative countervailing duty rates in its investigation of *Certain Steel Wheels*, ITA made no effort to estimate what the countervailable subsidy rate would have been had the interested party mandatory

respondents cooperated, and made no effort to see that the rates adopted reflected an alleged commercial reality of such interested parties.

16. The final countervailing duty rates reflected in the investigation of *Certain Steel Wheels* do not constitute a measure of a net countervailable subsidy.

17. On May 1, 2020, ITA published a notice providing interested parties with an opportunity to seek administrative review of the countervailing duty order against *Certain Steel Wheels* for the period August 31, 2018 through December 31, 2019. 85 Fed. Reg. 25394. No interested party requested a review of the order.

18. On July 29, 2019, ITA issued a notice to CBP, *see* Administrative Message #021404, directing CBP to liquidate entries of Certain Steel Wheels at the countervailing duty rates determined in the Notice of Final Results of the countervailing duty investigation. Plaintiff's entries were thereafter liquidated with countervailing duty assessments as high as 457.10% *ad valorem.*

   **B. Antidumping Duties**

19. The antidumping duty statute, 19 U.S.C. § 1673 *et seq.*, which is the best evidence of its contents, provides for the imposition of an antidumping duty on imported merchandise which is found to have been sold at less than fair value prices, where such merchandise has been determined by the ITC to have caused or threatened material injury to an industry in the United States producing a "like product".

20. As with countervailing duties, antidumping duties are calculated by the ITA. These duties are assessed on imported merchandise by CBP, acting at the direction of ITA.

21. ITA typically calculates the amount of antidumping duty to be assessed by issuing questionnaires to foreign producers and foreign exporters, and by analyzing the responses

to those questionnaires to calculate the "United States Price" of the imported merchandise (either "Export Value" or "Constructed Export Value"), and the "Normal Value" of identical or similar merchandise.

22. The Tariff Act of 1930, as amended, 19 U.S.C. §1673, which is the best evidence of its contents, provides that where the statutory conditions are met, an antidumping duty shall be assessed, in addition to any other duty imposed, "in an amount equal to the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise."

23. At times relevant to this Complaint, the Department had suspended liquidation of entries and directed CBP to collect provisional estimated antidumping duties, or had issued an Antidumping Duty Order, and directed CBP to collect definitive estimated antidumping duty deposits, in respect of *Certain Steel Wheels from the People's Republic of China. See* 84 Fed. Reg. 11746-11749.

24. On March 28, 2019, ITA published in the Federal Register its Final Affirmative Less Than Fair Value Determination in the antidumping investigation of *Certain Steel Wheels*. *See* 84 Fed. Reg. 11746-11749. The notice, which is the best evidence of its contents, indicates that no interested party participated in the investigation to Commerce's satisfaction. Commerce stated,

> However, in this investigation, no individually examined companies participated in the investigation, and Commerce has applied total AFA to all producers and exporters, including the China-wide entity, in accordance with section 776 of the Act. The applied AFA rate continues to be based solely on the petition, and, therefore, there are no calculations to disclose to interested parties."

*Id.* at 11747-48. ITA established a single "China wide" rate of 231.70% *ad valorem*.

25. In making its final determination in the antidumping duty investigation of *Certain Steel Wheels*, ITA, on information and belief, made its determination on the basis of adverse inferences. Section 776 of the Tariff Act of 1930, 19 U.S.C. § 1677e, provides that:

> **(b) Adverse inferences**
>
> (1) In general
>
> If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle—
>
> > (C) may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available; and
> >
> > (D) is not required to determine, or make any adjustments to, a countervailable subsidy rate or weighted average dumping margin based on any assumptions about information the interested party would have provided if the interested party had complied with the request for information.

26. Section 776e(e)(3) of the Tariff Act of 1930, as amended by the Trade Preferences Extension Act of 2015, further provides that:

> (3) No obligation to make certain estimates or address certain claims
>
> If the administering authority uses an adverse inference under subsection (b)(1)(A) in selecting among the facts otherwise available, the administering authority is not required, for purposes of subsection (c) or for any other purpose—
>
> > (C) to estimate what the countervailable subsidy rate or dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated; or
> >
> > (D) to demonstrate that the countervailable subsidy rate or dumping margin used by the

> administering authority reflects an alleged commercial reality of the interested party.

19 U.S.C. § 1677e. On information and belief, in setting the final affirmative antidumping duty rates in its investigation of *Certain Steel Wheels*, ITA made no effort to estimate what the antidumping rate would have been had the interested party mandatory respondents cooperated, and made no effort to see that the rates adopted reflected an alleged commercial reality of such interested parties.

27. The final antidumping duty rates reflected in the investigation of *Certain Steel Wheels* do not constitute a measure of the difference between Normal Values and Export Prices or Constructed Export Prices.

28. On May 1, 2020, 2020, ITA published a notice providing interested parties with an opportunity to seek administrative review of the antidumping duty order against *Certain Steel Wheels* for the period August 31, 2018 through December 31, 2019. 85 Fed. Reg. 25394. No interested party requested a review of the order.

29. On July 29, 2019, ITA issued a notice to CBP, *see* Administrative Message #021408, directing CBP to liquidate entries of *Certain Steel Wheels* at the antidumping duty rates determined in the Notice of Final Results of the countervailing duty investigation. Plaintiff's entries were thereafter liquidated by CBP with antidumping duty assessments of 231.70% *ad valorem.*

## COUNT I

30. Paragraphs 1 through 29 are incorporated by reference and restated as though fully set out herein.

31. The Eighth Amendment to the Constitution of the United States, which is the best evidence of its contents, provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

32. In *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), the U.S. Supreme Court identified the following factors to be considered in determining whether a statute, or an action taken thereunder, is penal in nature, as opposed to remedial. These factors are (*id.*at 168-69):

> [W]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment – retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may be rationally connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

33. Although antidumping and countervailing duties have traditionally been considered remedial rather than penal in nature, Section 502 of the Trade Preferences Extension Act of 2015, by amending 19 U.S.C. § 1677e to eliminate the requirements that ITA consider assumptions about what an interested party would have placed on the record of a proceeding had it complied with ITA's request for information, or consider whether the rates established would have approximated the "commercial reality" of the interested party, creates the possibility that rates determined by ITA and assessed by CBP are, in particular cases, penal in nature and excessive fines in violation of the Eighth Amendment, and invites a judicial inquiry into such question.

34. Whether an amount imposed as a customs duty is in fact penal in nature was addressed by the Supreme Court in *Helwig v. United States*, 188 U.S. 605, 611 (1903),where the Court noted that if "the amount imposed was so large in proportion to the value of the merchandise imported, as to show beyond doubt that it was a sum imposed not, in fact, as

a duty upon an imported article, but as a penalty and nothing else", it may be treated as a fine or penalty and subjected to Eighth Amendment scrutiny.

35. In *Helwig, supra* ¶34, the Supreme Court noted that, although Congress may enact statutes that do not explicitly call its requirements penalties, "in the absence of any declaration by Congress affecting the manner in which the provision shall be treated, courts must decide the matter in accordance with their views of the nature of the act." 188 U.S. at 613.

36. Under the analytical framework set out in *Helwig, supra* ¶34, a reviewing Court may conclude that a statute not denominated a fine or penalty is (188 U.S. at 613):

> … a penalty in its intrinsic nature, and the failure of the statute to designate it as a penalty … will not work … [it] will be regarded as a penalty when by its very nature it is a penalty. It is impossible, judging simply from its language, to hold this provision to be other than penal in its nature."

37. The Supreme Court further noted in *Helwig* (*id.*):

> although the sum imposed by reason of undervaluation may be simply described as "a further sum" or "an additional duty," if it is yet so enormously in excess of the greatest amount of regular duty ever imposed upon an article of the same nature, and it is imposed by reason of the action of the importer, such facts clearly show it is a penalty in its intrinsic nature, and the failure of the statute to designate it as a penalty, but describing it as 'a further sum,' or 'an additional duty', will not work a statutory alteration of the nature of the imposition, and it will be regarded as a penalty when by its very nature it is a penalty. It is impossible, judging simply from its language, to hold this provision to be other than penal in its nature.

38. In *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1997), the Supreme Court, in considering whether a Customs forfeiture offended the Eighth Amendment, stated:

> [T]he touchstone of the constitutional inquiry under the Excessive Fines Clause of the Eighth Amendment is the principle of proportionality. The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Courts must compare "the proportionality determination de novo, must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.

39. Prior to enactment of Section 502 of the Trade Preferences Extension Act, the purpose of the AFA provisions in the antidumping and countervailing duty laws was narrowly tailored "to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *F. Lii de Cecco di Filippo Fara S. Martino v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); *see also Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1330 (Fed. Cir. 2020).

40. The countervailing duty margins imposed on Plaintiff's entries of *Certain Steel Wheels* do not represent the measurement of a "net countervailable subsidy" as required by 19 U.S.C. § 1671(a)(2).

41. ITA's determination of a 457.10% countervailing duty rate for non-cooperative respondents was based on assigning a subsidy rate for every Chinese government program ever determined to bestow countervailable subsidies, including programs which are mutually exclusive in coverage, evident of a penal intent.

42. ITA's determination of a 457.10% countervailing duty rate for "All Other" respondents, including respondents who did not fail to cooperate with the agency in its investigation, is unlawful and further constitutes evidence of penal intent.

43. ITA's direction to CBP to impose the 457.10% countervailing duty on entries made by importers such as Plaintiff, which were not parties to the underlying investigation or annual review proceedings, and who did not fail to cooperate with any agency requests, is further evidence of a penal intent.

44. ITA's determination of a 231.70% antidumping duty rate for *Certain Steel Wheels*, including Plaintiff's imported merchandise, is not based on any comparison of normal

values for the subject merchandise in *Certain Steel Wheels* with export prices or constructed export prices of subject merchandise from the People's Republic of China.

45. ITA's refusal to direct CBP to make an adequate offset to antidumping duty margins to prevent double counting of certain subsidies is not in accordance with law and constitutes further evidence of penal intent.

46. The countervailing and antidumping rates imposed by CBP on Plaintiff's merchandise were not remedial, but penal in nature.

47. Plaintiff suffered Constitutional injury in the form of deprivation of property when CBP exacted the excessive and penal countervailing and antidumping duties from Plaintiff in liquidation of the import entries which were the subject of Plaintiff's denied protest, and which are the subject of this case.

48. The assessments against Plaintiff constitute an unconstitutional Excessive Fine, in contravention of the Eighth Amendment to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court grant judgment in its favor, directing the Port Director of CBP at the Port of Entry to reliquidate the subject entries without assessment of countervailing and antidumping duties, and to refund to Plaintiff excessive monies assessed, together with interest as provided by law; and providing Plaintiff with such further and additional relief as this Court may deem just.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff, Rimco, Inc.*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006

T: (212) 635-2730
F: (212) 635-2734

By:   /s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein

September 22, 2021