**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE**
-------------------------------------------------------------------- X
RIMCO, INC.,                                                   :
                                                              :
        **Plaintiff,**                                    :
                                                              :
        *v.*                                             :          **No. 21-cv-00537**
                                                              :
**UNITED STATES,**                                            :
                                                              :
        **Defendant.**                                   :
-------------------------------------------------------------------- X

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NEVILLE PETERSON LLP
*Counsel for Plaintiff*


John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  May 4, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF FACTS ...................................................................................................1

STANDARD OF REVIEW ..................................................................................................3

ARGUMENT ........................................................................................................................5

I.      Defendant's Rule 12(b)(1) Motion to Dismiss is Without Merit.......................................5

         A.      CBP Made a Protestable Decision to Assess the Excessive Fines.........................7

         B.      There Was No Need For Plaintiff to Present its Claims to Commerce. ...............10

         C.      Unconstitutional Exactions May be Challenged by Protest...................................12

         D.      Protest is Appropriate Where the Act Challenged as Unconstitutional is an Administrative Determination, Rather than a Statute ...........................................16

II.     Defendant's Rule 12(b)(6) Motion is Without Merit.........................................................18

III.    In the Alternative, Jurisdiction is Proper under 28 U.S.C. § 1581(i)................................19

CONCLUSION ...................................................................................................................21

# **TABLE OF AUTHORITIES**

**Cases**

*A.N. Deringer Inc. v. United States*, 66 C.C.P.A 50 (1979) .......................................................... 13

*Alliance Nature Health US v. Sibelius*, 714 F. Supp. 2d 48 (D.D.C. 2010). ............................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................................................... 4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ............................................................................... 4, 18

*Azar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009)............................................................................. 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 4, 5, 18

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)........................................................ 18

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) .............................................. 4

*Conoco v. U.S. Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994) ............................... 7

*Cooper v. Pate*, 378 U.S. 546 (1964)............................................................................................ 5

*Engage Learning, Inc. v. Salazaar*, 660 F.3d 1346 (Fed. Cir. 2011).............................................. 4

*Esso Std. Oil Co. v. United States*, 559 F.3d 1297 (Fed. Cir. 2009)............................................... 9

*Farrell Lines, Inc. v. United States*, 69 C.C.P.A. 1 (1982)............................................................ 9

*Gallant Ocean (Thail.) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010)............................ 11

*Gete v. INS*, 121 F.3d 1285 (9th Cir. 1997) ............................................................................... 12

*Gibbs v. Buck*, 307 U.S. 66 (1939) ............................................................................................... 4

*Goldman v. United States,* 28 C.C.P.A. 162 (1940). ................................................................... 13

*Hartford Fire Ins. Co. v. United States,* 772 F.3d 1281 (Fed. Cir. 2014)....................................... 5

*International Business Machines Corp. v. United States*, 301 F.3d 1367 (Fed. Cir. 2002) ......... 16

*Jakupaj v. United States*, 2022 U.S. Dist. LEXIS 33602 (E.D.N.Y. 2022)..................................... 5

*Jonas v. United States*, 2020 U.S. Dist. LEXIS 46953 (E.D.N.Y. 2020) ....................................... 5

*LDA Incorporado v. United States*, 978 F. Supp. 2d 1359 (Ct. Int'l Tr. 2014) .............................. 4

*Luggage & Leather Goods Mfrs. Assn. v. United States*, 588 F. Supp. 1413 (Ct. Int'l Tr. 1984) ................................................................................................................................................ 7

*M.G. Maher & Co. v. United States*, 26 C.I.T. 1040 (2002)........................................................ 17

*McGrath v. Weinberger*, 541 F.2d 249 (10th Cir. 1976) ............................................................. 12

*Miller & Co. v. United States*, 824 F.2d 961 (Fed. Cir. 1987)................................................ 17, 20

*Nufarm America's Inc. v. United States*, 29 C.I.T. 1317 (2005) ................................... 16, 17, 19

*Oestereich v. Selective Serv. Sys*, 393 U.S. 233 (1968)............................................................... 12

*Orleans Int'l Inc. v. United States*, 335 F.3d 1375 (2003).......................................................... 15

*Pat Huval Rest. & Oyster Bar, Inc. v. United States*, 32 C.I.T. 232 (2008) ........................... 5, 15

*Schick v. United States*, 31 C.I.T. 2017 (2007)............................................................................. 5

*Schreiber v. McCament*, 349 F. Supp. 3d 1063 (D. Kan. 2018) ................................................. 12

*Sony Elecs. Inc. v. United States*, 26 C.I.T. 286 (2002)............................................................... 16

*Swisher Int'l v. United States*, 205 F.3d 1358 (Fed. Cir. 2000)............................................. passim

*Syva Co. v. United States,* 681 F. Supp. 885 (Ct. Int'l Tr. 1988)................................................... 6

*Thomson Consumer Elecs. v. United States*, 62 F.Supp. 2d 1182 (Ct. Int'l Tr. 1999) .......... 10, 17

*Totes-Isotoner Corp. v. United States*, 580 F. Supp. 2d 1371  (2008)....................................... 15

*Travenol Labs., Inc. v. United States*, 118 F.3d 749(Fed. Cir. 1997) ............................................ 9

*United States v. Boe*, 64 C.C.P.A. 11 (1976) .............................................................................. 9

*United States v. C.O. Mason Inc.*, 51 C.C.P.A. 107 (1964)........................................................ 13

*United States v. Cajo Trading Inc.*, 55 C.C.P.A. 61 (1968) ........................................................ 13

*United States v. Fox River Butter Co.*, 20 C.C.P.A. 38 (1932)................................................... 13

ii

*United States v. Nitek Elecs., Inc.,* 844 F. Supp. 2d 1298 (Ct. Int'l Tr. 2012)................................. 4
*United States v. U.S. Shoe Corp.,* 523 U.S. 360 (1998).............................................................. 15
*United States v. Utex Int'l, Inc.,* 857 F.2d 1408 (Fed. Cir. 1988)................................................. 9
*Volkswagen of Am., Inc. v. United States,* 532 F.3d 1365 (Fed. Cir. 2008) ................................. 9
*Wilkie v. Robins,* 551 U.S. 537 (2007)...................................................................................... 18
*Wirtgen Am. v. United States,* 437 F. Supp. 3d 1302 (Ct. Int'l Tr. 2020)................................. 6, 19

**Statutes**
19 U.S.C. § 1500................................................................................................................ 7, 18
19 U.S.C. § 1501.................................................................................................................... 9
19 U.S.C. § 1504.................................................................................................................... 8
19 U.S.C. § 1514.............................................................................................................. passim
19 U.S.C. § 1515.............................................................................................................. 3, 15
19 U.S.C. § 1677e............................................................................................................ passim
28 U.S.C. § 1581.............................................................................................................. passim
28 U.S.C. § 2637.......................................................................................................... 7, 14, 16
28 U.S.C. § 2640.................................................................................................................. 16
Customs Courts Act of 1980, Pub. L. 96-417, 94 Stat. 1727 (1980)...................................... 5, 14
to 19 U.S.C. § 1505............................................................................................................. 16
Trade Preferences Extension Act of 2015, Pub. L. 114-27, 129 Stat. 362 (2015)...................... 11

**Other Authorities**
*Certain Steel Wheels from the People's Republic of China: Antidumping and
   Countervailing Duty Order,* 84 Fed. Reg. 24098 (May 24, 2019) .................................... 2, 3, 6
*Webster's Third New Int'l Dictionary* 337 (1981)........................................................................ 6

**Treatises**
1 *West's Law & Commercial Dictionary in Five Languages* 237 (1985)...................................... 6
*Black's Law Dictionary* 221 (5th ed. 1979) .............................................................................. 6
R. Sturm, *Customs Law & Administration* § 8.3 (3d ed. 1982)................................................... 9

**Constitutional Provisions**
U.S. Const. amend. VII.................................................................................................... 1, 3, 12

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE**
-------------------------------------------------------------------- X
RIMCO, INC.,                             :

                 :

           **Plaintiff,**           :

                 :

           *v.*                      :         **No. 21-cv-00537**

                 :

UNITED STATES,               :

                 :

           **Defendant.**         :
-------------------------------------------------------------------- X

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

In accordance with Rules 7, 12(b)(1) and 12(b)(6) of the Rules of the United States Court of International Trade ("USCIT R."), Plaintiff, Rimco, Inc. ("Rimco" or "Plaintiff"), hereby responds in opposition to the Motion of Defendant, United States, to dismiss this action for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim on which relief may be granted under Rule 12(b)(6). *See* ECF 32. As discussed herein, Plaintiff has stated a cognizable cause of action for refund of amounts styled by Defendant as customs duties, which Plaintiff contends are in fact "excessive fines" prohibited by the Eighth Amendment to the United States Constitution. This Court has subject matter of this protest denial action pursuant to 28 U.S.C. § 1581(a), or in the alternative, pursuant to 28 U.S.C. § 1581(i). For the reasons stated herein, Defendants' Motions to Dismiss must be denied.

## STATEMENT OF FACTS

Plaintiff Rimco, Inc., of Neche, North Dakota, is an importer and reseller of wheels for cars, trucks and agricultural vehicles.

At times relevant to this action, between January 21, 2019 and July 3, 2019 the U.S. Department of Commerce (the "Department" or "Commerce"), International Trade Administration ("ITA"), had ordered suspension of liquidation of entries subject to the antidumping duty ("ADD")

and countervailing duty ("CVD") orders on *Certain Steel Wheels from the People's Republic of China*, and had directed U.S. Customs and Border Protection ("CBP" or "Customs"), to collect provisional estimated CVD; or had issued a CVD Order, and directed CBP to collect definitive estimated CVD deposits. *See Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Order*, 84 Fed. Reg. 24098, 24099 (May 24, 2019) (the "Order" or "*Certain Steel Wheels ADD/CVD Order*").

Commerce calculated the *Certain Steel Wheels ADD/CVD Order* CVD assessment rates on the basis of adverse facts available ("AFA"), *see* 19 U.S.C. § 1677e(b), after two mandatory respondents in the CVD investigation—*i.e.,* Xiamen Sunrise Wheel Group Ltd. and Zhejiang Jingu Co. Ltd.— had declined to cooperate with the investigations and were each assigned <u>CVD rates of 457.10% *ad valorem*</u>. Commerce also assigned an "<u>all others" rate of 457.10%</u> for all subject wheels shipped by non-reviewed exporters. In assigning these rates, Commerce acted pursuant to Section 776 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677e(d)(3), which provides:

**(3) No obligation to make certain estimates or address certain claims**

If the administering authority uses an adverse inference under subsection (b)(1)(A) in selecting among the facts otherwise available, the administering authority is not required, for purposes of subsection (c) or for any other purpose—

(A) to estimate what the countervailable subsidy rate or dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated; or

(B) to demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party.

Also at times relevant to this action, Commerce had suspended liquidation of entries subject to the *Certain Steel Wheels* antidumping investigation*,* and had directed CBP to collect provisional estimated ADD, or had issued an ADD Order, and directed CBP to collect definitive

estimated ADD deposits. *See Certain Steel Wheels ADD/CVD Order*, at 24,098. Because Commerce found that no selected "mandatory respondent" had participated to its satisfaction in the ADD investigation, it issued an <u>ADD margin of 231.70% *ad valorem*</u>. Here again this ADD rate was based on adverse facts available pursuant to 19 U.S.C. § 1677e(d)(3), and in setting the rate, Commerce made no attempt to estimate the dumping rate which would have resulted had interested parties cooperated in the proceeding, nor to reflect an alleged commercial reality of any such interested party. *See* 19 U.S.C. § 1677e(d)(3). The rate was applied to reviewed and nonreviewed exporters alike.

The AFA rates were not based on any measure of actual subsidization of the subject merchandise, nor on any actual comparison of export prices and normal values, as contemplated by statute.

Plaintiff Rimco made seven (7) consumption entries of goods subject to the *Certain Steel Wheels ADD/CVD Order* which were assessed with ADD and CVD in liquidation at rates as high as 688.8% *ad valorem*.

On March 16, 2021, Rimco timely protested the charges as "excessive fines" in contravention of the Eighth Amendment to the United States Constitution. CBP denied Rimco's protest on March 30, 2021.

Plaintiff timely commenced this action pursuant to 19 U.S.C. § 1515, invoking the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a)[1].

## **STANDARD OF REVIEW**

A motion to dismiss for lack of subject matter jurisdiction under USCIT R. 12(b)(1) is

---

[1] In the alternative, Plaintiff filed its Summons and Complaint concurrently, lest this Court decide that subject matter jurisdiction properly arises under 28 U.S.C. § 1581(i).

evaluated as a factual attack on the Court's subject matter jurisdiction, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993), and a court may consider evidence outside the pleadings in evaluating that attack. *Gibbs v. Buck*, 307 U.S. 66, 71 (1939). When a party challenges the factual basis underlying the pleadings in a USCIT R. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true only those facts which are uncontroverted:

> If a Fed. R. Civ. P. 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion. In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.

*Cedars-Sinai*, 11 F.3d at 1583-84; *see also, LDA Incorporado v. United States*, 978 F. Supp. 2d 1359, 1363 (Ct. Int'l Tr. 2014); *Engage Learning, Inc. v. Salazaar,* 660 F.3d 1346, 1355 (Fed. Cir. 2011); *United States v. Nitek Elecs., Inc.,* 844 F. Supp. 2d 1298, 1302 (Ct. Int'l Tr. 2012), recon. den., No. 11-00078, 2012 Ct. Intl. Trade LEXIS 106 (August 7, 2012), aff'd 806 F.3d 1376 (Fed. Cir. 2015). All other facts are subject to fact finding by the Court. *See Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 248 (1986).

USCIT R. 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must assume that all well-pleaded facts in the complaint are true and must draw all reasonable inferences in the

Plaintiff's favor. *Hartford Fire Ins. Co. v. United States,* 772 F.3d 1281, 1284 (Fed. Cir. 2014); *see also, Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Cooper v. Pate*, 378 U.S. 546 (1964).

For the Court to grant Defendants' Motion to Dismiss under USCIT Rule 12(b)(6), it must conclude that the "plaintiff's factual allegations are not 'enough to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Pat Huval Rest. & Oyster Bar, Inc. v. United States*, 32 C.I.T. 232, 236 (2008) (quoting *Twombly*, 550 U.S. at 555), *aff'd*, 785 F.3d 638 (Fed. Cir. 2015); *Schick v. United States*, 31 C.I.T. 2017, 2020 (2007). However, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563.

## **ARGUMENT**

### I.   **Defendant's Rule 12(b)(1) Motion to Dismiss is Without Merit.**

Defendant's Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction is without merit and should be denied. This Court and its predecessor, the United States Customs Court, have dependably entertained challenges to Customs assessments deemed unconstitutional—both under the traditional "protest" jurisdiction, now codified at 28 U.S.C. § 1581(a); and under this Court's 28 U.S.C. § 1581(i) "residual jurisdiction," which was created by the Customs Courts Act of 1980, Pub. L. 96-417, 94 Stat. 1727 (1980).

To assert a Constitutional claim, a plaintiff must name either the United States as the Federal defendant or a Federal official as a defendant in its complaint. *Jakupaj v. United States*, 2022 U.S. Dist. LEXIS 33602 at *8-9 (E.D.N.Y. 2022); *see also, Jonas v. United States*, 2020 U.S. Dist. LEXIS 46953 at *4 (E.D.N.Y. 2020). Plaintiff has properly asserted a claim in this case.

Plaintiff's cause of action is against the United States, as the Federal Defendant. The Federal Defendant is not absolved of liability in this matter simply because the unconstitutional injury was inflicted on Plaintiff by one department of the U.S. Government—*i.e.,* CBP—at the direction of another—*i.e., Commerce*.

The CIT's protest jurisdiction, 28 U.S.C. § 1581(a)[2], is the appropriate basis for this Court to entertain the instant challenge, and the Court is empowered to provide Plaintiff with appropriate relief from the constitutional injury of which it complains pursuant to 28 U.S.C. § 2643. It is of no moment that, in inflicting on Plaintiff the unconstitutional injury, CBP acted in a ministerial capacity by following the directions given to it by Commerce. Indeed, recently in *Wirtgen Am. v. United States*, 437 F. Supp. 3d 1302, 1314-1315 (Ct. Int'l Tr. 2020), the Court held that a decision made by CBP was a protestable decision even though CBP acted pursuant to directions given to it by the International Trade Commission ("ITC"). The Court reasoned that the plaintiff was not challenging the correctness of the ITC's decision, and the case "will be adjudicated *de novo* by the court, rather than according to the grounds on which Customs made the exclusion decisions." *Id.* at 1307. In this case, Customs demanded and collected from Plaintiff the charges claimed to inflict a constitutional injury as "excessive fines."

It is irrelevant that CBP was acting ministerially and was without choice in the assessment of ADD and CVD subject to the *Certain Steel Wheels ADD/CVD Order*. An agency's lack of

---

[2] Plaintiff 's protest challenges a decision regarding a "charge or exaction of whatever character", as described in 19 U.S.C. § 1514(a)(3). "A 'charge' encompasses a broad range of meanings including: an obligation or duty, a liability, an expense or the price of an object; an entry in an account of what's due from one party to another." *Syva Co. v. United States,* 681 F. Supp. 885, 888  (Ct. Int'l Tr. 1988) (citing 1 *West's Law & Commercial Dictionary in Five Languages* 237 (1985); *Webster's Third New Int'l Dictionary* 337 (1981); *Black's Law Dictionary* 221 (5th ed. 1979)). Furthermore a protest of the refusal to refund an amount contested as unconstitutional has been held to be a decision as to a charge or exaction and thus properly raised by protest. *Swisher Int'l v. United States*, 205 F.3d 1358, 1360 (Fed. Cir. 2000).

discretion in a matter may, in certain cases, justify a judicial waiver of exhaustion of administrative remedies pursuant to 28 U.S.C. § 2637(d), on the ground that requiring exhaustion would be futile or inappropriate, *see e.g.*, *Conoco v. U.S. Foreign Trade Zones Board*, 18 F.3d 1581, 1587 (Fed. Cir. 1994); *Luggage & Leather Goods Mfrs. Assn. v. United States*, 588 F. Supp. 1413, 1421 (Ct. Int'l Tr. 1984), but a plaintiff's decision to exhaust the administrative protest remedy does not unsuit it.

Nor, as Defendant asserts in its Motion (ECF 32), was there any requirement for Plaintiff to exhaust remedies by petitioning Commerce in the underlying administrative proceeding to adopt ADD and CVD rates that could pass Constitutional scrutiny. As explained herein, executive agencies lack the institutional competence to adjudge the constitutionality of any proposed (or actual) assessment. Moreover, the issues raised by plaintiff here could not have been raised before Commerce or in an action brought under 28 U.S.C. § 1581(c). In the pre-liquidation environment under which 28 U.S.C. § 1581(c) cases are litigated, Plaintiff, in the absence of liquidation, would have suffered no injury and could not have presented a ripened claim of constitutional injury to this Court for judicial review.

### A.    CBP Made a Protestable Decision to Assess the Excessive Fines.

CBP made a protestable decision to assess the unconstitutional duties when it liquidated Plaintiff's entries. Section 500 of the Tariff Act of 1930, *as amended* 19 U.S.C. § 1500, mandates that CBP make a "decision" regarding every consumption entry of merchandise (emphasis added):

> **Sec. 1500. Appraisement, classification, and liquidation procedure**
>
> **The Customs Service shall**, under rules and regulations prescribed by the Secretary—
>
> (a) fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power, any statement of cost or costs of production in any

invoice, affidavit, declaration, other document to the contrary notwithstanding;

(b) fix the final classification and rate of duty applicable to such merchandise;

(c) fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited;

(d) liquidate the entry and reconciliation, if any, of such merchandise; and

(e) give or transmit, pursuant to an electronic data interchange system, notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall by regulation prescribe.

As provided, CBP must "liquidate" the entry within one (1) year of the date of entry unless the period for liquidation is extended pursuant to 19 U.S.C. § 1504(a), or liquidation is suspended as required by law.

Section 514(a) of the Tariff Act, 19 U.S.C. § 1514(a), establishes liquidation as the final challengeable event in CBP's collection process.[3] Unless CBP voluntarily reliquidates an entry

---

[3] Section 1514(a) provides:

**Sec. 1514. Protest against decisions of Customs Service**

(a) Finality of decisions; return of papers
Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

pursuant to 19 U.S.C. § 1501, findings related to an entry's liquidation merge into CBP's liquidation decision. If an importer wishes to challenge a CBP decision that has merged into a liquidation, the importer must protest the liquidation. *See Travenol Labs., Inc. v. United States*, 118 F.3d 749, 753 (Fed. Cir. 1997) (stating that liquidation is "long honored in customs procedure as the final reckoning of an importer's liability on an entry" (citing *Farrell Lines, Inc. v. United States*, 69 C.C.P.A. 1, 13 (1982))); *see also United States v. Utex Int'l, Inc.*, 857 F.2d 1408, 1409-10, 1412 (Fed. Cir. 1988) (finding that all aspects of entry were merged in the liquidation and that "absent timely reliquidation or protest" the liquidation was final, and stating "'All findings involved in a district director's decision merge in the liquidation. It is the liquidation which is final and subject to protest, not the preliminary findings or decisions of customs officers.'" (quoting R. Sturm, *Customs Law & Administration* § 8.3 Finality of Liquidation at 32, (3d ed. 1982))); *see also United States v. Boe*, 64 C.C.P.A. 11, 16 (1976) (finding that filing a protest pursuant to § 1514 is "mandatory" for jurisdiction); *see also, Volkswagen of Am., Inc. v. United States*, 532 F.3d 1365, 1370-1371 (Fed. Cir. 2008); *see also, Esso Std. Oil Co. v. United States*, 559 F.3d 1297 (Fed. Cir. 2009) ("any fee collected at liquidation is considered merged in the liquidation. A legal challenge to a liquidation decision must be made as a protest … ").

---

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title; shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

Even charges later found to be unconstitutional, when assessed in liquidation of an entry, are considered merged in the liquidation, and must be protested—and the protest claim may raise the claim of unconstitutionality. *Swisher Int'l Inc. v. United States*, 205 F.3d 1358, 1368 at FN 8 (Fed. Cir. 2000) (citing *Thomson Consumer Elecs. v. United States*, 62 F.Supp. 2d 1182 (Ct. Int'l Tr. 1999)).

The only decisions **not** protestable following liquidation are those identified in Section 514(b) of the Tariff Act, 19 U.S.C. § 1514(b), which provides:

**(b) Finality of determinations**

> With respect to determinations made under section 1303 of this title or subtitle IV of this chapter which are reviewable under section 1516a of this title, determinations of the Customs Service are final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action contesting a determination listed in section 1516a of this title is commenced in the United States Court of International Trade, or review by a binational panel of a determination to which section 1516a(g)(2) of this title applies is commenced pursuant to section 1516a(g) of this title and article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement.

As further explained below, the decision protested here is not a challenge to the correctness of any determination of Commerce made under the statutes referenced in § 1514(b).

For purposes of this action, we assume that Commerce's ADD and CVD calculations were made in accordance with the ADD and CVD laws written by Congress. This suit does not contest those determinations. Rather, this action addresses *the effect* of those determinations, mainly whether CBP's assessment of charges pursuant to Commerce's determinations has resulted in an unconstitutional "excessive fine." We assert that it has.

### B.      There Was No Need For Plaintiff to Present its Claims to Commerce.

There was neither need, nor opportunity, for Plaintiff to exhaust any administrative remedy before Commerce, or to invoke this Court's 28 U.S.C. § 1581(c) jurisdiction, nor was there any

remedy which Commerce or this Court could grant it in such a setting. Plaintiff does not contend that Commerce acted contrary to the statutes governing its activities in antidumping or countervailing duty investigations or reviews.[4] In any event, Commerce lacks both power and competence to evaluate the constitutionality of its actions.[5]

Although it was formerly the case that AFA inferences were applied "to provide respondents [in ADD and CVD proceedings] with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins," *Gallant Ocean (Thail.) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010), plaintiff contends that this is not necessarily the case anymore since Congress, in Section 502 of the Trade Preferences Extension Act of 2015, Pub. L. 114-27, 129 Stat. 362 (2015), 19 U.S.C. § 1677e, amended the Tariff Act of 1930 to provide that "if the administering authority uses an adverse inference … in selecting among the facts otherwise available, the administering authority is not required … to estimate what the countervailable subsidy rate or dumping margin would have been … [or] to demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party." 19 U.S.C. § 1677e(d)(3).

Thus, the characterization in the *Gallant Ocean (Thail.) Co. v. United States,* 602 F.3d 1323 (Fed. Cir. 2010) line of cases that the AFA rate must be a "reasonably accurate estimate" of dumping or subsidization with "some built-in increase" is no longer necessarily the case. *Gallant*

---

[4] Defendant notes Commerce's 2011 notice *Non-Market Economy Antidumping Proceedings; Assessment of Antidumping Duties*, 76 Fed. Reg. 65694 (October 24, 2011) as authority for why plaintiff should have presented its claims and concerns to Commerce. The notice is inapposite; the notice merely adopts a refinement in practice as to how it determines non-market economy ("NME") rates in antidumping cases. It merely notifies the public that if an entry is not reported to Commerce by the exporter, it is not considered subject to review, and will not receive the "all others" rate determined in the review proceeding.

[5] Defendant seems to imply, without citation to authority, that Plaintiff had some obligation to mitigate or minimize the possibility that an unconstitutional measure might be taken against it, and that, if such efforts are not made, any unconstitutional action is not subject to challenge or judicial review. There is no basis for such a proposition.

*Ocean* was effectively overturned by Section 502 of the Trade Preferences Extension Act of 2015. The removal of a "commercial reality" touchstone from Title VII of the Tariff Act opened the ADD and CVD laws to the possibility that assessments made pursuant to AFA determinations could constitute "excessive fines" in violation of the Eighth Amendment[6]. That, Plaintiff contends, is what occurred here.

No unconstitutional injury—no "excessive fine"—existed in this case until CBP exacted monies from Rimco. Contrary to Defendant's assertion, these issues could not have been raised before the Commerce Department in an action brought pursuant to 28 U.S.C. § 1581(c) because (1) the Commerce Department does not, in its activities under the Tariff Act, exact, demand or collect any monies; and (2) the Commerce Department is not competent to judge the constitutionality of its actions—that is a function reserved to the Courts. *See McGrath v. Weinberger*, 541 F.2d 249, 252-53 (10th Cir. 1976); *Gete v. INS*, 121 F.3d 1285, 1291 (9th Cir. 1997); *Schreiber v. McCament*, 349 F. Supp. 3d 1063, 1082 (D. Kan. 2018); *see also Oestereich v. Selective Serv. Sys*, 393 U.S. 233, 242 (1968) (Harlan, J., concurring). Moreover, courts review agency determinations without any reliance on agency determinations of constitutionality. *Alliance Nature Health US v. Sibelius*, 714 F. Supp. 2d 48, 60 (D.D.C. 2010). Thus, any attempt by Plaintiff to raise its claims or concerns before Commerce would be futile and inappropriate.

### C.   Unconstitutional Exactions May be Challenged by Protest

Unconstitutional exactions made by Customs in the liquidation of import entries have always been subject to challenge by protest. Section 514(a) provides that determinations "adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service,

---

[6] Untethered from the requirement to consider "commercial reality", Commerce might, in a given case, determine an AFA rate of 1,000,000% – or more. While subject to Constitutional challenge, such a determination would not be subject to statutory challenge, since 19 U.S.C. § 1677e places no constraints on CBP's latitude to set an AFA rate.

*including the legality of all orders and findings entering into the same*" as to various subjects, including "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury," "shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section." Challenges to the legality of "orders and findings entering into an assessment" include challenges to the constitutionality of such orders and findings. 19 U.S.C. § 1514(a)(3).

It has long been recognized that a protest against CBP's liquidation of an entry may be a vehicle for obtaining a court decision that an act of Congress is unconstitutional. *See e.g.*, *United States v. Fox River Butter Co*., 20 C.C.P.A. 38 (1932); *see also, Goldman v. United States,* 28 C.C.P.A. 162 (1940).

At one time, the courts took the position that a liquidation based on an unconstitutional provision of a statute was not a final legal liquidation, and need not be protested, for such a "void liquidation" did not start the running of the statute of limitations for filing a protest action. It was believed that administrative housekeeping actions were required to bow to constitutional supremacy. *See e.g., United States v. C.O. Mason Inc.*, 51 C.C.P.A. 107, 113 (1964), *cert. den.* 379 U.S. 999 (1965); *see also, United States v. Cajo Trading Inc.*, 55 C.C.P.A. 61, 63-64 (1968), *cert. den*. 393 U.S. 827 (1968). However, this concept of a "void liquidation" was supplanted by the 1970 amendment of 19 U.S.C. § 1514(a). As noted by the Court of Appeals in *A.N. Deringer Inc. v. United States*, 66 C.C.P.A 50, 55 (1979):

> We do not find it necessary to overrule *Cajo* and *Mason* since the Congress has already effectively done so. As noted above, 19 U.S.C. § 1514(a)(1970) makes it quite clear that timely protests must be filed in order to challenge "decisions of the appropriate Customs officer, including the *legality* of all orders and findings entering into same" (Italic ours). The demise of the "void liquidation" rule is further highlighted by the omission from the Tariff Act, as amended in 1970, of the very statutory language—"as provided by law"—relied upon by the court in *Mason*. The appropriate Customs official is now simply required to "liquidate the entry of such

13

merchandise" (19 U.S.C. 1500(d) (1970) rather than liquidate " . . . as provided by law" (19 U.S.C. 1505 (1930)). Removal of this stipulation further enhances what we perceive to be a pervasive replacement throughout the statute to channel all nonexcepted protests through section 1514 even when those protests go to the legality of a Customs official's action.

Following the 1970 enactment of 19 U.S.C. § 1514(a), it became clear that any challenge to a CBP exaction, even one challenged as unconstitutional, was required to be initiated by the filing of a protest under that statute.

Congress made two alterations to this statutory scheme in the Customs Courts Act of 1980. *See* Pub. L. 96-417, 94 Stat. 1727, *et seq.* First, the CIT's jurisdiction was expanded to reflect its newly-conferred status as an Article III Court with all powers in law and equity of a Federal District Court. This expansion included the creation of a new "residual" grant of subject matter jurisdiction contained in 28 U.S.C. § 1581(i).

Second, Congress enacted 28 U.S.C. § 2637(d), which provides:

In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.

On numerous occasions, this Court has exercised its discretionary power under 28 U.S.C. § 2637(d) to waive the exhaustion of administrative protest remedies when it finds that requiring the exhaustion of such remedies to be "futile" or "inappropriate."[7] This has included cases where plaintiffs have challenged the constitutionality of a statute imposing a charge or exaction, where

---

[7] Arguably, the referenced discretionary power does not come into play with this case, since here, Plaintiff, as prescribed by 28 U.S.C. § 2637(a), filed:

A civil action contesting denial of a protest under section 515 of the Tariff Act of 1930 [which] may be commenced only if all liquidated duties, charges or exactions have been paid at the time the action is commenced, except that a surety's obligation to pay such liquidated duties, charges or exactions is limited to the sum of any bond related to such entry included in the denied protest.

This Court's discretion to waive exhaustion of the protest remedy—which applies "[i]n any civil action not specified in this section, id., § 2637(d)—is not operative here because Plaintiff filed an action complying with the requirements of 28 U.S.C. § 2637(a).

protest would be "futile" since an administrative agency does not have the power to hold an Act of Congress unconstitutional. *See e.g., Totes-Isotoner Corp. v. United States*, 580 F. Supp. 2d 1371, 1376-1377 (2008) (challenging constitutionality of various tariff provisions asserted to violate constitutional equal protection guarantees); *Orleans Int'l Inc. v. United States*, 335 F.3d 1375, 1380 (2003); *Pat Huval Rest. & Oyster Bar Inc. v. United States,* 547 F. Supp. 2d 1352, 1362-63 (Ct. Int'l Tr. 2008) (challenging constitutionality of Byrd Amendment).

A plaintiff's determination to pursue an administrative remedy, even though the pursuit might be futile, inappropriate, or ultimately unsuccessful, does not unsuit it.[8] In this regard, 28 U.S.C. § 1581(a) vests this court with jurisdiction "in any civil action commenced to contest [Customs'] denial of a protest." *Totes-Isotoner, supra,* 580 F. Supp. at 1375. An importing plaintiff, such as Rimco, may use the protest remedy as a tool to challenge an exaction of monies by CBP "including the legality of all orders and findings entering into same." 19 U.S.C. § 1514(a). The election of how to proceed rests with the plaintiff.

Thus, although the Supreme Court has held that plaintiffs may challenge the constitutionality of the export Harbor Maintenance Tax ("HMT") under 28 U.S.C. § 1581(i), without exhausting the § 1514(a) protest remedy, *see United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998), the Federal Circuit thereafter held that plaintiffs could challenge the constitutionality of the very same HMT by protesting CBP's refusal to refund the tax and, upon denial of its protest, initiating suit in this court under 28 U.S.C. § 1581(a) to challenge such denial. *See Swisher International Inc. v. United States*, 205 F.3d 1358, 1360 (Fed. Cir. 2000). That precedent binds

---

[8] It may be noted that the pursuit of an unsuccessful administrative remedy is precisely what gives rise to a cause of action under 19 U.S.C. § 1515, over which this Court *must* assume jurisdiction pursuant to 28 U.S.C. § 1581(a).

this Court. Numerous litigants recovered export HMT payments by filing protests and litigating

actions in this Court under 28 U.S.C. § 1581(a). *See e.g.*, *Sony Elecs. Inc. v. United States*, 26

C.I.T. 286 (2002).[9]

    **D.**    **Protest is Appropriate Where the Act Challenged as Unconstitutional is an Administrative Determination, Rather than a Statute**

    Moreover, while the Court in the modern era, acting in reliance on 28 U.S.C. § 2637(d),

has generally held that a litigant may seek judicial waiver of exhaustion of administrative remedies

when it challenges the constitutionality of a statute, the same presumption does not attach where,

as here, the plaintiff contests an *administrative action* as unconstitutional. Thus, in *Nufarm*

*America's Inc. v. United States*, 29 C.I.T. 1317 (2005), the plaintiff sought to pursue a class action

to challenge as unconstitutional a CBP regulation which established a system for assessing "duty

deferment payments" on goods which transited the United States under in-bond procedures before

being exported to Canada or Mexico. *Id.* at 1318. The plaintiff paid the sums demanded, filed a

protest and then brought suit to recover the monies under 28 U.S.C. § 1581(a). Subsequently, the

plaintiff sought to amend its Complaint to invoke the Court's 28 U.S.C. § 1581(i) "residual"

jurisdiction. *Id.* at 1319. The Court rejected the plaintiff's argument that invoking protest denial

jurisdiction under § 1581(a) was unavailable or manifestly inadequate since the protest involved

solely constitutional issues—much the same argument Defendant raises here. *Id.* at 1327-1330.

Finding that the plaintiff had a meaningful route to judicial relief under 28 U.S.C. § 1581(a), this

---

    [9] There are numerous reasons why a litigant might want to pursue a constitutional challenge under 28 U.S.C. § 1581(a) following denial of a protest rather than by filing suit under the Court's 28 U.S.C. § 1581(i) residual jurisdiction. These include the availability of *de novo* review on a court made record in § 1581(a) protest cases, *see* 28 U.S.C. § 2640(a)(1), whereas § 1581(i) "residual jurisdiction cases are decided on the basis of an agency record, on a deferential standard of review, *see* 28 U.S.C. § 2640(d); a potentially more generous statute of limitations in an action brought under § 1581(a) than under § 1581(i), as in *Swisher International*, *supra*; and the availability of pre-filing interest on any recoveries made in a § 1581(a) case pursuant to 19 U.S.C. § 1505(c)—a remedy which may not be available in an action brought under this Court's § 1581(i) jurisdiction. *See International Business Machines Corp. v. United States*, 301 F.3d 1367 (Fed. Cir. 2002) (interest on refunds of export HMT not available in case brought under this Court's residual jurisdiction.)

Court held that invoking § 1581(i) "residual" jurisdiction was not appropriate. *Id.* at 1325-26 (citing *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987)). The Court noted that where the constitutional challenge is to an administrative, rather than a legislative action, it may be more appropriate to encourage "further factual development within the agency." *Id.* at 1327 (citing *Thomson Consumer Elecs. v. United States*, 247 F.3d 1210 (Fed. Cir. 2001)). The Court further noted that:

> The distinction between a Customs regulation and a statute is dispositive as to whether the exhaustion of administrative remedies under 28 U.S.C. § 1581(a) is futile. Exhaustion in this case is not futile and hence is required, irrespective of any distinction.

*Id.* at 1327. The *Nufarm America*'s Court also cautioned against "overstat[ing] the causal relationship between the existence of a constitutional claim and the exhaustion requirement." *Id.* at 1328. *See also e.g., M.G. Maher & Co. v. United States*, 26 C.I.T. 1040, 1041 (2002) (challenge to validity of a Customs regulation must proceed under 28 U.S.C. § 1581(a)).

Where the decision challenged as unconstitutional is that of an agency, rather than the legislature, the development of issues on an administrative record may allow resolution of the claim on non-constitutional grounds. In such cases, exhaustion of remedies may be required. But even if protesting does not provide for expansive development of issues—here, CBP cursorily denied Rimco's protest just days after it had been filed—the protest mechanism is still an appropriate vehicle for proceeding.

In this case, Plaintiff's decision to exhaust the protest remedy is prudent. Congress has fashioned a statutory mechanism at 19 U.S.C. § 1514(a) for importers to challenge unlawful, or unconstitutional, exactions of money at the hands of CBP. Plaintiff's decision to use that mechanism is in accord with Congressional intent, and it spares this Court of the duty to fashion

an original remedy should it rule in Plaintiff's favor. As noted in *Azar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009):

> (1) Where Congress has selected a remedy for constitutional injuries, the courts should defer to its legislative wisdom; (2) where Congress has not considered a remedy, however, a court must use its judgment concerning the best way to supplement a constitutional guarantee.

*Id.* at 622 (citing *Wilkie v. Robins*, 551 U.S. 537, 550 (2007); *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 396-97 (1971)). Here, where a constitutional injury is inflicted by CBP, by making a charge deemed an excessive fine, it is appropriate for Plaintiff to raise its claim using the statutory protest remedy provided by Congress.

## II.     Defendant's Rule 12(b)(6) Motion is Without Merit

Defendant also purports to move for dismissal of this action under USCIT Rule 12(b)(6) for failure to state a claim on which relief can be granted. This very brief motion seems to be a repetition of the Defendant's Rule 12(b)(1) motion to dismiss for lack of jurisdiction, asserting that Plaintiff's claim is against CBP (the agency which imposed the unconstitutional charge) and that "plaintiff does not allege that CBP made any errors in conducting the ministerial role of applying the instructions in Administrative Messages #021404 and #021408" (liquidation instructions received from Commerce). *See* Def. Br. at 14. From this, Defendant posits that Plaintiff has not pleaded a "plausible" claim, citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).

Defendant misses the point. By statute, 19 U.S.C. § 1500, CBP is required to determine the rate and amount of duty applicable to an entry of imported merchandise, and render a decision regarding same. By statute, 19 U.S.C. § 1514(a), that statutory decision by CBP, together with the legality of all orders and findings entering therein, is subject to protest. CBP's liquidation decision

is protestable, even if it reflects directions provided by another agency and is carried out ministerially by CBP. *See e.g., Wirtgen Am. Inc. v. United States*, 437 F. Supp 3d 1359 (Ct. Int'l Tr. 2020). That CBP may be bound by statute to carry out an act deemed unconstitutional may allow an aggrieved party to seek waiver of administrative remedies and lodge a complaint directly with this Court, *see e.g.*, *U.S. Shoe Corp. v. United States*, 523 U.S. 360 (1998), it may nonetheless raise its claims by pursuing its protest remedy, should it elect to do so. *See e.g.*, *Swisher International Inc. v. United States,* 205 F.3d 1358 (Fed. Cir. 2000). Indeed, use of the protest remedy is preferred, and may be required where, as here, the unconstitutional action complained of is that of an administrative agency. *See e.g.*, *Nufarm America's Inc. v. United States*, 29 C.I.T. 1317 (2005).

The notion that a plaintiff is unsuited with respect to a claim of constitutional injury because the agency inflicting the injury acts ministerially, or at the direction of another agency, or pursuant to a statute it has no authority to disregard or disobey is, frankly, absurd, and a "cop-out" on the Government's part. If accepted, it would mean that the Commerce Department, acting pursuant to 19 U.S.C. § 1677e(b)(3) and its power to ignore commercial reality, might find ADD and CVD margins exceeding even the multi-confiscatory rates complained of in this action, and use its authority to shut down whole sectors of import trade, without fear of meaningful judicial review of its actions. As noted above, this action is not brought individually against CBP or Commerce, but against the Federal Defendant, a necessary party to a constitutional suit. Defendant's Rule 12(b)(6) motion is without merit and must be denied.

## III.    In the Alternative, Jurisdiction is Proper under 28 U.S.C. § 1581(i)

If this Court should find that it lacks jurisdiction under 28 U.S.C. § 1581(a) jurisdiction is still available under 28 U.S.C. § 1581(i) as this action arises from a law providing for the

imposition of duties other than for the purpose of raising revenue, and because action relates to the administration and enforcement of matters covered by 28 U.S.C. § 1581(a) through (h). However, the Court need not reach this determination because jurisdiction is proper under 28 U.S.C. § 1581(a). In *Miller & Co. v. United States*, 824 F.2d 961 (Fed. Cir. 1987) the Federal Circuit held that:

> Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.

*Id.* at 963. In this case, because Plaintiff has established that jurisdiction is proper and exists under 28 U.S.C. § 1581(a) it would be improper to assert jurisdiction under 28 U.S.C. § 1581(i).

However, because it is a possibility that the Court might not agree with Plaintiff as to the availability of jurisdiction under 28 U.S.C. § 1581(a), in this situation the Court still possess "residual jurisdiction" under 28 U.S.C. § 1581(i). The Government argues that "[b]ecause Rimco's action challenges Commerce's rate determinations assessed consistent with Commerce's regulation, it could hand should ave [*sic*] invoked jurisdiction under section 1581(c)." *See* Def.'s Brief at 10. As detailed above, jurisdiction is unavailable under 28 U.S.C. § 1581(c). Plaintiff does not contend that Commerce acted contrary to the statutes governing its activities in ADD or CVD investigations or reviews. No unconstitutional injury—no "excessive fine"—existed in this case until CBP exacted monies from Rimco. Contrary to Defendant's assertion, these issues could not have been raised before Commerce, or this Court in an action brought pursuant to 28 U.S.C. § 1581(c), because: (1) Commerce does not, in its activities under the Tariff Act, exact, demand or collect any monies, and (2) Commerce is not competent to judge the constitutionality of its actions—that is a function reserved to the Courts.

**<u>CONCLUSION</u>**

For the reasons set forth herein, Defendant's motion to dismiss should be denied, and the

Defendant should be directed to file an Answer to the Complaint in this action.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  May 4, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE**
-------------------------------------------------------------------- X
RIMCO, INC.,                                                      :
                                                                 :
               **Plaintiff,**                                    :
                                                                 :
        *v.*                                                     :        **No. 21-cv-00537**
                                                                 :
UNITED STATES,                                                   :
                                                                 :
               **Defendant.**                                    :
-------------------------------------------------------------------- X

## CERTIFICATE OF COMPLIANCE

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 6,952 words.

Respectfully submitted,

/s/ Patrick B. Klein
       Patrick B. Klein