UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| RIMCO, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00537 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

CLAUDIA BURKE
Assistant Director

*OF COUNSEL*:
IAN McINERNEY
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce

YELENA SLEPAK
FARIHA KABIR
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: June 8, 2022

BEVERLY A. FARRELL
Senior Trial Attorney

ASHLEY AKERS
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Dept. of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0521
Attorneys for Defendant United States

## TABLE OF CONTENTS

BACKGROUND ................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 4

ARGUMENT ....................................................................................................... 5

I.   RIMCO'S CLAIM OF EXCESSIVE DUMPING AND COUNTERVAILING
     DUTY RATES SHOULD HAVE BEEN ADMINISTRATIVELY RAISED WITH
     COMMERCE........................................................................................... 5

     A.   The True Nature Of Rimco's Action Is Its Disagreement With Commerce's
          Antidumping And Countervailing Duty Determinations...................... 5

II.  RIMCO CANNOT CLAIM JURISDICTION UNDER 28 U.S.C. § 1581(a) BECAUSE
     CBP DID NOT MAKE A PROTESTABLE DECISION ................................. 8

III. THIS COURT DOES NOT POSSESS JURISDICTION UNDER 28 U.S.C. § 1581(i)
     BECAUSE JURISDICTION UNDER 28 U.S.C. § 1581(c) WAS AVAILABLE ........ 10

IV.  IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR
     FAILURE TO STATE A CLAIM AGAINST CBP ....................................... 13

CONCLUSION.................................................................................................... 14

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aireko Constr., LLC v. United States,*
  547 F. Supp. 3d 1350 (Ct. Int'l Tr. 2021) ............................................................... 13

*Albemarle Corp. & Subsidiaries v. United States,*
  821 F.3d 1345 (Fed. Cir. 2016)……………………………………………………..6.

*American Nat'l Fire Ins. Co. v. United States,*
  411 F. Supp. 2d 1275, 1285 (Ct. Int'l Trade  2006) ............................................... 8

*Changzhou Hawd Flooring Co., Ltd. v. United States,*
  947 F.3d 781 (Fed. Cir. 2020)……………………………………………………….6

*Chemsol, LLC and MC International, LLC, v. United States,*
  755 F.3d 1345 (Fed. Cir. 2014)............................................................................... 12

*Consolidated Bearings Co. v. United States,*
  348 F.3d 997 (Fed. Cir. 2003)................................................................................. 8

*Diamond Sawblades Manufacturers Coalition v. United States,*
866 F.3d 1304 (Fed. Cir. 2017)……………………………………………………..6

*Erwin Hymer Grp. N. Am. v. United States,*
  930 F.3d 1370 (Fed. Cir. 2019) *aff'd* 4 4.4th 1363 (Fed. Cir. 2021). .................... 11

*Hartford Fire Ins. Co. v. United States,*
  544 F.3d 1289 (Fed. Cir. 2008)............................................................................... 11

*Int'l Custom Prods., Inc. v. United States,*
  467 F.3d 1324 (Fed. Cir. 2006)............................................................................... 11

*J.S. Stone, Inc. v. United States,*
  297 F. Supp. 2d 1333 (Ct. Int'l Trade 2003) ........................................................ 12

*JCM, Ltd. v. United States,*
  210 F.3d 1357 (Fed. Cir. 2000)............................................................................... 11

*Juancheng Kangtai Chem. Co., Ltd. v. United States,*
  932 F.3d 1321 (Fed. Cir. 2019)............................................................................... 6

*Mitsubishi Elec. Am., Inc. v. United States,*
  44 F.3d 973 (Fed. Cir. 1994).......................................................................9, 10, 13

*Norsk Hydro Can., Inc. v. United States,*
　　472 F.3d 1347 (Fed. Cir. 2006) ................................................................ 11

*Playhouse Imp. and Exp., Inc. v. United States,*
　　843 F. Supp. 716 (Ct. Int'l Trade 1994) ................................................. 10

*Shinyei Corp. of Am. v. United States,*
　　355 F.3d 1297 (Fed. Cir. 2004) ................................................................ 10

*Sunpreme Inc. v. United States,*
　　892 F.3d 1186 (Fed. Cir. 2018) ................................................................ 11

*TR Int'l Trading Co. v. United States,*
　　433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020) .................................... 10-11

*TR Int'l Trading Co., Inc. v. United States,*
　　4 F.4th 1363 (Fed. Cir. 2021) .................................................................. 11

*UniPro Foodservice, Inc. v. United States,*
　　577 F. Supp. 2d 1348 (Ct. Int'l Trade 2008) ......................................... 10

*Wanxiang America Corp. v. United States,*
　　12 F.4th 1369 (Fed. Cir. 2021) ................................................................ 11

## **Statutes**

19 U.S.C. § 1514 .............................................................................................. 4, 9

19 U.S.C. § 1514(a) ........................................................................................ 9, 10

19 U.S.C. § 1514(b) ............................................................................................... 9

19 U.S.C. § 1515 ................................................................................................... 9

19 U.S.C. § 1516a ............................................................................................... 12

19 U.S.C. § 1677(9) ........................................................................................... 12

28 U.S.C. § 1581 ................................................................................................ 12

28 U.S.C. § 1581(a) ..................................................................................... *passim*

28 U.S.C. § 1581(c) ..................................................................................... *passim*

28 U.S.C. § 1581(i) ...................................................................................... *passim*

28 U.S.C. § 1581(i)(1)(B) ........................................................................................... 4, 10

28 U.S.C. § 1581(i)(1)(D) ........................................................................................... 4, 10

**Rules**

USCIT Rule 12(b)(1) ...................................................................................................... 14

USCIT Rule 12(b)(6) ...................................................................................................... 14

**Other Authorities**

*Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing*
*Duty Determination,*
   84 Fed. Reg. 11,744 (Mar. 28, 2019) .......................................................................... 1

*Certain Steel Wheels From the People's Republic of China: Final Determination of Sales at*
*Less-Than-Fair-Value,*
   84 Fed. Reg. 11,746 (Mar. 28, 2019) .......................................................................... 1

*Certain Steel Wheels From the People's Republic of China: Antidumping and Countervailing*
*Duty Orders,*
   84 Fed. Reg. 24,098-24,100 (May 24, 2019) .......................................................... 2, 5

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity*
*to Request Administrative Review,*
   85 Fed. Reg. 25,394, 25,396 (Dep't of Commerce May 1, 2020) ................................. 2, 3, 12

*Non-Market Economy Antidumping Proceedings:  Assessment of Antidumping Duties,*
   76 Fed. Reg. 65,694 (October 24, 2011) ................................................................. 2, 3

H.R. Rep. No. 96-1235 (1980) .................................................................................. 8-9

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| RIMCO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 21-00537 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
<u>JURISDICTION OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM</u>**

In accordance with the Court's May 20, 2022 Order, defendant, the United States (the Government), respectfully submits this reply memorandum in response to plaintiff's, Rimco, Inc. (Rimco), opposition to defendant's motion to dismiss and in further support of our motion to dismiss for lack of jurisdiction, or alternatively, for failure to state a claim on which relief can be granted.

## <u>BACKGROUND</u>

On March 28, 2019, after both a countervailing duty and antidumping duty investigations, the Department of Commerce (Commerce) published the final countervailing and antidumping duty determinations on certain steel wheels from the People's Republic of China (PRC). *Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 84 Fed. Reg. 11,744 (Mar. 28, 2019) (*Steel Wheels CVD*) and *Certain Steel Wheels From the People's Republic of China: Final Determination of Sales at Less-Than-Fair-Value*, 84 Fed. Reg. 11,746 (Mar. 28, 2019) (*Steel Wheels ADD*).  On May 24,

2019, Commerce published the attendant orders.  *Certain Steel Wheels From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098-24,100 (May 24, 2019).  For the antidumping duty administrative review, the mandatory respondents withdrew and only the China-wide entity rate was determined.  *See Steel Wheels ADD*.  In the countervailing duty administrative review, Commerce established rates for two companies along with an All-Others rate.  *See Steel Wheels CVD.*

On May 1, 2020, Commerce published a notice of opportunity to request an administrative review of the countervailing and antidumping duty orders for the periods August 31, 2018 through December 31, 2019, and October 30, 2018 through April 30, 2020, respectively.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 85 Fed. Reg. 25394, 25396 (Dep't of Commerce May 1, 2020) (*Opportunity Notice*) (requests for administrative review of both the antidumping and countervailing duty orders).  Rimco's seven entries (dated January 21, 2019, January 26, 2019, April 10, 2019, June 10, 2019, July 3, 2019, and September 11 2019) fell within the time periods in the *Opportunity Notice*.

In the *Opportunity Notice*, Commerce explained that in requesting an antidumping administrative review, interested parties should be mindful of Commerce's assessment policy with respect to imports of merchandise where intermediate companies are involved.  *Id.* at 25,397 (citing *Non-Market Economy Antidumping Proceedings:  Assessment of Antidumping Duties*, 76 Fed. Reg. 65,694 (October 24, 2011) (*NME Assessment Policy*)).[1]  Pursuant to the

---

[1] In the *NME Assessment Policy*, Commerce states the following:

[I]mporters will sometimes declare in their entry documentation a cash deposit rate that is associated with a company which has a company-specific rate, as opposed to the NME-wide rate, but the sales underlying the particular entry are

assessment policy, entries of steel wheels under the case number for an individually-examined exporter would be liquidated at the PRC-wide entity rate if that individually-examined exporter did not include the merchandise in its U.S. sales database submitted during the review.  *See NME Assessment Policy*, 76 Fed. Reg. at 65,694-95.  Simply put, importers must participate in administrative reviews to ensure that their entries of subject merchandise are liquidated in accordance with their expectations.  *See id.* at 65,695.  Rimco, a U.S. importer interested party did not request either an antidumping or countervailing duty administrative review in response to the *Opportunity Notice*.

Because no party requested a review of either the CVD or ADD order, Commerce issued liquidation instructions in July 2019, directing U.S. Customs and Border Protection (CBP) to liquidate entries at the as entered cash deposit rate for certain steel wheels covered by the *Steel Wheels CVD* and *Steel Wheels ADD* orders.  Compl. ¶¶ 18, 29; *see also* Entry No. 13-1 at 31, 48, 69, 88-89, 107-08, 127-28, and 149-50.  CBP applied the rates provided for in the instructions to seven entries of Rimco's imported merchandise and liquidated the entries.  *See* Entry No. 13-1 at 31, 48, 69, 88-89, 107-08, 127-28, and 149-50.

On March 16, 2021, Rimco filed a protest challenging, as grossly excessive and in violation of the Eighth Amendment to the United States Constitution, "the assessment of sums asserted to be antidumping and countervailing duties on its imports of Steel Truck Wheels from

---

not reported to or reviewed by [Commerce] in the course of the administrative review covering the company.  As a result, there may be suspended entries to which [Commerce]'s final review results do not apply. . .  [Commerce] will instruct CBP to apply the NME-wide rate to entries suspended at a reviewed exporter's rate, but which are not reported to or reviewed by [Commerce] during the administrative review process.

76 Fed. Reg. at 64,694.  Commerce also explained that "any interested party can file a notice of appearance with [Commerce] to ensure that its entries are liquidated in accordance with its expectations."  *Id.* at 64,695.

the People's Republic of China, under Antidumping Duty order A-570-082 and Countervailing

Duty order C-571-083."  Entry No. 13-1 at 1, 4.  On March 30, 2021, CBP denied the protest,

explaining that "19 U.S.C. 1514 does not authorize protests or petitions filed against Commerce

calculations or findings.  Protest must be filed with Commerce."  Entry No. 13-1 at 2.

On September 22, 2021, Rimco commenced this action under 28 U.S.C. §§ 1581(a) and

1581(i)(1)(B) and (D) alleging that the assessment on its merchandise of a countervailing duty

rate of 457.10 percent and an antidumping duty rate of 231.70 percent constitutes

unconstitutional "excessive fines" under the Eighth Amendment to the United States

Constitution.  Compl. ¶¶ 2, 3, 18, 29, 48.  Through this action, Rimco seeks a judgment "in its

favor, directing the Port Director of CBP at the Port of Entry to reliquidate the subject entries

without assessment of countervailing and antidumping duties, and to refund to Plaintiff excessive

monies assessed, together with interest as provided by law."  Compl. at p. 14.

## SUMMARY OF ARGUMENT

The Court lacks jurisdiction to entertain the complaint because the true nature of the

claim is a challenge to the *amount* of antidumping and countervailing duties determined by

Commerce.  Rimco alleges that the amount of duties—in particular the assessment of a rate

derived from adverse inferences—constitutes an excessive fine under the Constitution.  The

decision of what rate to apply is Commerce's alone, and for that reason, the claim should have

been brought as a 28 U.S.C. § 1581(c) challenge.  Had Rimco exhausted that approach,

Commerce, the agency delegated the authority by Congress to assess antidumping and

countervailing duty rates, could have considered Rimco's arguments that the rates were punitive,

and it could have potentially altered its decision.

Because the decision of how much antidumping and countervailing duties to assess is solely Commerce's, CBP cannot possibly assess whether the duties assessed were excessive or punitive in any way.  And because Rimco could have, but chose not to request an administrative review, the Court lacks jurisdiction under 28 U.S.C. § 1581(i).

<u>**ARGUMENT**</u>

I.   **RIMCO'S CLAIM OF EXCESSIVE DUMPING AND COUNTERVAILING DUTY RATES SHOULD HAVE BEEN ADMINISTRATIVELY RAISED WITH COMMERCE**

   A.   **The True Nature Of Rimco's Action Is Its Disagreement With Commerce's Antidumping And Countervailing Duty Determinations**

A review of its complaint reveals that the true nature of Rimco's claim is a disagreement with Commerce's antidumping and countervailing duty rates (antidumping margin of 231.70 and a subsidy rate of 457.10).  *Certain Steel Wheels From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098, 24,099 (Dep't of Commerce May 24, 2019).

Rimco perceives the application of these orders with combined rates as high as 688.8 percent as excessive fines contrary to the U.S. Constitution.  Pl. Opp'n at 3.  As support for its failure to exhaust its administrative remedy before Commerce, Rimco argues that Commerce cannot judge the constitutionality of its actions.  Pl. Opp'n at 12.  But Rimco does not dispute any practice, or action taken by Commerce; rather, it challenges Commerce's findings and determinations as to the *amount* of the duties assessed.  Rimco does not argue that Commerce's process in rendering its findings and determinations was constitutionally fraught.  In fact, it is the opposite.  "Plaintiff does not contend that Commerce acted contrary to the statutes governing its activities in antidumping or countervailing duty investigations or reviews."  Pl. Opp'n at 11.

Disputes concerning findings and determinations are the very grist of a typical Commerce administrative proceeding.  *See Juancheng Kangtai Chem. Co., Ltd. v. United States*, 932 F.3d 1321, 1329-30 (Fed. Cir. 2019).  And such matters are the proper subject matter of a section 1581(c) action.  In fact, the manner in which Commerce may use the all-others rate has been the subject of much litigation in this Court and at the Court of Appeals for the Federal Circuit.  *See, e.g., Changzhou Hawd Flooring Co., Ltd. v. United States*, 947 F.3d 781 (Fed. Cir. 2020); *Diamond Sawblades Manufacturers Coalition v. United States*, 866 F.3d 1304 (Fed. Cir. 2017); *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345 (Fed. Cir. 2016).  Not only is Commerce the agency with the statutory authority to assess duties, it is the agency that can assess Rimco's arguments and potentially adjust duty amounts, thus avoiding the alleged constitutional issue.  Rimco's attempt to couch this matter as otherwise should be rejected.

Rimco contends that it did not need to timely raise with Commerce its claim that Commerce's antidumping and countervailing duty rates applicable to its steel wheels were too high.  Pl. Opp'n at 10-11.  In advancing this point, Rimco asserts that it does not contend that Commerce acted contrary to statutes applicable to antidumping or countervailing duty investigations or reviews.  Pl. Opp'n at 11.  Yet, this assertion is irrelevant to Rimco's actual claim:  that Commerce's findings and determinations resulted in excessive duties.  Similarly irrelevant is Rimco's contention that Commerce lacks the power and competence to evaluate the constitutionality of its actions.  Pl. Opp'n at 11.  Rimco's only dispute is the amount of the rates. Whether those rates could be found to constitute an unconstitutional "excessive fine" could only be determined after Commerce had an opportunity to hear Rimco's arguments, which may have resulted in lower rates.  By circumventing Congress's jurisdictional plan that disagreements with Commerce's antidumping and countervailing findings and determinations must first be raised

administratively with Commerce, Rimco has foreclosed its ability to be heard in this Court regarding the level of the antidumping and countervailing rates.

Rimco attempts to excuse its failure by arguing that raising its claims before Commerce would have been futile and inapprorirate as no excessive fine existed in this action until CBP's liquidation.  Again, Rimco misapprehends the nature of its case.  CBP could not have generated what Rimco believes are "excessive fines" without first receiving Commerce's liquidation instructions.  Thus, this shows that the true nature of Rimco's case is its claim that Commerce's rate determinations were too high, irrespective of whether such rates might be seen as contrary to the Eighth Amendment.  Therefore, Rimco's protestation that raising its claims with Commerce would be futile rests on the faulty logic that future events supported its inaction.  Consistent with Congress's jurisdictional plan, Rimco had an opportunity to persuade Commerce that its rate determinations were too high.  It chose not to do so, and subsequently elimintated its ability to bring a jurisdictionally sound action to this Court.

Rimco's "constitutional" arguments to justify its failure to exhaust its administrative remedy before Commerce are unavailing and inapposite to the facts of this case.  Pl. Opp'n at 13-15.  First, its argument that the protest of a CBP liquidation could be a method through which to raise the constitutionality of an act of Congress is not at issue here.  Rimco does not claim that any statutory provision directed to Commerce's antidumping or countervailing processes is unconstitutional.  Next, Rimco claims that courts may waive the exhaustion of administrative remedies where seeking such remedies would be futile or inappropriate.  Pl. Opp'n at 14.  In support, Rimco notes that the constitutionality of a statute imposing a charge or exaction may support waiving an administrative remedy.  Pl. Opp'n at 14-15.  But Rimco does not dispute the

constitutionality of any such statute.  Morever, Rimco fails to acknowledge that, had it raised the issue to Commerce, Commerce might have adjusted the duties assessed.

Because Rimco did not administratively challenge Commerce's determinations, it is unable to assert jurisdiction under section 1581(c).  Nothing in Rimco's opposition establishes that proceeding in this fashion would have been futile or manifestly inadequate.

## II.   RIMCO CANNOT CLAIM JURISDICTION UNDER 28 U.S.C. § 1581(a) BECAUSE CBP DID NOT MAKE A PROTESTABLE DECISION

Rimco suggests that it can attack Commerce's antidumping and countervailing determinations through CBP by claiming that it is actually protesting CBP's assessments.  Pl. Opp'n at 5-7.  This suggestion should be rejected.  Congress adopted the Trade Agreements Act of 1979 to avoid the very pleading scenario Rimco attempts.  Through the Trade Agreements Act, Congress promulgated the CIT's jurisdictional grants of authority and explained that:

> IT IS THE INTENT OF THE COMMITTEE THAT IMPORTERS AND THEIR SURETIES NOT UTILIZE PROPOSED SECTION 1581(A) TO CIRCUMVENT THE EXCLUSIVE METHOD OF JUDICIAL REVIEW OF AN ANTIDUMPING AND COUNTERVAILING DUTY DETERMINATION LISTED IN SECTION 516A OF THE TARIFF ACT OF 1930 (19 U.S.C. 1516A), AS PROVIDED IN THAT SECTION. SECTION 516A OF THE TARIFF ACT OF 1930 WAS ADDED TO THAT ACT BY THE TRADE AGREEMENTS ACT OF 1979. THE 1979 ACT REVISED THE ANTIDUMPING AND COUNTERVAILING STATUTES SO AS TO PROVIDE INTER ALIA, THAT EACH YEAR THE ADMINISTERING AUTHORITY MUST PUBLISH A STATEMENT OF THE PROPOSED ANTIDUMPING OR COUNTERVAILING DUTY TO BE ASSESSED UPON ALL MERCHANDISE COVERED BY AN ANTIDUMPING OR COUNTERVAILING DUTY ORDER AND WHICH ENTERED THE UNITED STATES DURING THE PRECEDING YEAR. SECTION 516A OF THE TARIFF ACT OF 1930 PROVIDES THAT AN IMPORTER MUST CHALLENGE THE ASSESSMENT OR THE AMOUNT OF THE ANTIDUMPING OR COUNTERVAILING DUTY TO BE IMPOSED AT THE TIME OF THE ANNUAL PUBLICATION. AN IMPORTER MAY NOT AWAIT THE ACTUAL ASSESSMENT OF THE DUTY, FILE A PROTEST, AND UPON DENIAL OF THE PROTEST FILE A CIVIL ACTION IN THE COURT OF INTERNATIONAL TRADE UNDER PROPOSED SECTION 1581(A). RATHER, THE COMMITTEE INTENDS THAT SUCH ACTIONS BE COMMENCED PURSUANT TO THE STATUTES GOVERNING THE

> COMMENCEMENT OF A CIVIL ACTION TO REVIEW THE
> DETERMINATIONS LISTED IN SECTION 516A OF THE TARIFF ACT OF
> 1930.

H.R. Rep. No. 96-1235 (1980). Thus, Congress amended section 1514(a) and (b) by excluding

antidumping determinations from the matters that a party could protest to CBP. *Mitsubishi Elec.*

*Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994).

Realizing that section 1581(a) jurisdiction turns on a protestable decision, Rimco

contends that CBP made a protestable decision to assess excessive fines. Pl. Opp'n at 7-

10. Rimco strains to manufacture a "decision" by CBP that converts Commerce's

determinations to those of CBP by arguing that "liquidation is the final challengeable

event in CBP's collection process." Opp'n at 8. And that liquidation merges all of

CBP's findings and decisions. Opp'n at 8-9. This is true. But Rimco misapprehends the

salient point: CBP does not make *Commerce's* findings and determinations. It is well

established that, when Commerce instructs CBP to liquidate entries, "Customs merely

follows Commerce's instructions in assessing and collecting duties" and cannot "modify

Commerce's determinations, their underlying facts, or their enforcement." *Mitsubishi*, 44

F.3d at 977.[2]

Section 1581(a) provides this Court with "exclusive jurisdiction of any civil action

commenced to contest the denial of a protest, in whole or in part," under 19 U.S.C. § 1515.

Section 1515 requires an aggrieved party to file a protest under 19 U.S.C. § 1514. Section

1514(a) sets forth the categories of Customs decisions that are subject to protest. Those

---

[2] Nor is Rimco's claim rescued by the fact that a protested claim may raise an issue of
constitutionality. Pl. Opp'n at 10. A section 1514 protest, the foundation of section 1581(a)
jurisdiction, still requires a decision by CBP. Mere ministerial acts by Customs in liquidating
antidumping and countervailing duties do not amount to decisionmaking. *See Mitsubishi*, 44
F.3d at 977.

categories are exclusive, and if "Customs' underlying decision does not relate to any of these seven categories, the Court may not exercise § 1581(a) jurisdiction over an action contesting Customs' denial of a protest filed against that decision." *American Nat'l Fire Ins. Co. v. United States*, 411 F. Supp. 2d 1275, 1285 (Ct. Int'l Trade  2006) (citing *Playhouse Imp. and Exp., Inc. v. United States*, 843 F. Supp. 716, 719 (Ct. Int'l Trade 1994)).  Additionally, "section 1514(a) does not embrace decisions by other agencies." *Mitsubishi,* 44 F.3d at 976.

 Decisions relating to a countervailing or antidumping duty rate are made by Commerce, not Customs, and do not fall within any of the categories listed in 19 U.S.C. § 1514(a).  *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004); *Consolidated Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003); *Mitsubishi*, 44 F.3d at 977; *UniPro Foodservice, Inc. v. United States*, 577 F. Supp. 2d 1348, 1352 (Ct. Int'l Trade 2008).

Rimco's argument that a protest is appropriate where the act challenged as unconstitutional is an administrative determination, Pl. Opp'n at 16-18, is similarly unavailing.  This is so because Rimco seeks to exchange Commerce's antidumping and countervailing determinations with CBP's ministerial liquidation to hide its own failure to challenge Commerce's determinations when it had the opportunity.

Thus, the Court lacks jurisdiction under section 1581(a) to entertain this claim because CBP did not make a protestable decision with respect to either the countervailing or antidumping rate applied to the imported merchandise.  Instead, CBP correctly implemented Commerce's liquidation instructions.

**III**.     **THIS COURT DOES NOT POSSESS JURISDICTION UNDER 28 U.S.C. § 1581(i) BECAUSE JURISDICTION UNDER 28 U.S.C. § 1581(c) WAS AVAILABLE**

Alternatively, Rimco pleads jurisdiction under section 1581(i)(1)(B) and (D).  The scope of the Court's jurisdiction under section 1581(i) is "strictly limited" to avoid such jurisdiction

"swallow[ing] the specific grants of jurisdiction contained within other subsections." *TR Int'l Trading Co. v. United States*, 433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020) (quoting *Erwin Hymer*, 930 F.3d at 1374) *aff'd* 4 F.4th 1363 (Fed. Cir. 2021). Indeed, this strict construction of section 1581(i) prevents a plaintiff from "circumvent[ing] the method Congress intended for them to bring certain types of claims." *TR Int'l Trading Co.*, 4 F.4th at 1367. Further, in evaluating a question of jurisdiction, the Court must look to the true nature of the action because "a party may not expand a court's jurisdiction by creative pleading." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (quoting *Norsk Hydro*, 472 F.3d at 1355).

The true nature of Rimco's action is as a challenge to the countervailing and antidumping duty rates determined by Commerce. *See* Compl. ¶¶ 1, 48. Because Rimco's action is actually a challenge to Commerce's rate determinations, it could have and should have invoked jurisdiction under section 1581(c).[3] Therefore, jurisdiction under section 1581(i) is precluded.

It is long-settled that "to prevent circumvention of the administrative processes crafted by Congress, jurisdiction under subsection 1581(i) may not be invoked if jurisdiction under another subsection of 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008) (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)). "An importer may not simply 'elect to proceed under [§] 1581(i) without having first availed himself of the remedy provided by [§] 1581(c).'" *Wanxiang America Corp. v. United States*, 12 F.4th 1369, 1374 (Fed. Cir. 2021) (citing *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (quoting *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000)).

---

[3] Rimco's claims are dependent upon the rates from the investigations, but Rimco failed to challenge those rates post-investigation when it had the opportunity.

Accordingly, "when relief is prospectively and realistically available under another subsection of 1581, invocation of subsection (i) is incorrect." *Chemsol, LLC and MC International, LLC, v. United States*, 755 F.3d 1345, 1354 (Fed. Cir. 2014) (citations omitted).

Rimco does not want the countervailing and antidumping duties rates determined by Commerce to be applied to its merchandise, and believes them to be excessive. As an importer of subject merchandise, Rimco was an interested party under 19 U.S.C. § 1677(9).[4] Rimco's claims are based on the rates determined by Commerce from the investigations. When Commerce issued its *Opportunity Notice*, Rimco had the opportunity to protect its interests requesting both countervailing and antidumping duty administrative reviews. *See J.S. Stone, Inc. v. United States*, 297 F. Supp. 2d 1333, 1344 (Ct. Int'l Trade 2003) ("If an importer decides not to participate in an administrative review, it bears the risk that Commerce may err in calculating the dumping margin."). During those proceedings, Rimco would have had the ability to challenge the assessment rates and make whatever constitutional arguments it wished. Commerce, the agency that administers the statute, would have then responded to those arguments.

And if Rimco was ultimately dissatisfied with the results of such efforts, it could have brought a valid action in this Court pursuant to section 1581(c) to challenge the countervailing and antidumping duty rates determined during the administrative reviews. 19 U.S.C. § 1516a. Rimco did not avail itself of the administrative remedies afforded it under the statute, but clearly

---

[4] The term "interested party" is defined as "(A) a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise . . . ." 19 U.S.C. § 1677(9).

could have.  There is nothing manifestly inadequate about this administrative remedy.  In fact, it's the sort of remedy routinely provided by this Court in section 1581(c) cases.

In sum, because jurisdiction under 28 U.S.C. § 1581(c) could have been available and the remedy would not have been manifestly inadequate, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1581(i) and should dismiss this action.

## IV.   IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST CBP

Rimco takes umbrage at our alternative grounds for dismissal of its claim against CBP and misses the point of our position.  Pl. Opp'n at 18-19.  Our point is merely another way of saying that CBP cannot change rates assessed by Commerce and therefore the Court can provide no relief, even if it exercises jurisdiction under section 1581(a).  *Aireko Constr., LLC v. United States*, 547 F. Supp. 3d 1350, 1356 (Ct. Int'l Tr. 2021) (citing *Mitsubishi*, 44 F.3d at 977).

Therefore, for the alternative reason, this action should be dismissed.

## CONCLUSION

For these reasons, and those provided in our moving papers, we respectfully request that the Court dismiss this action with prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction or, alternatively, Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:     /s/ Claudia Burke
        CLAUDIA BURKE
        Assistant Director

*OF COUNSEL*:
IAN McINERNEY                                /s/ Beverly A. Farrell
Office of the Chief Counsel                  BEVERLY A. FARRELL
        for Trade Enforcement and Compliance Senior Trial Counsel
U.S. Department of Commerce

                                             /s/ Ashley Akers
YELENA SLEPAK                                ASHLEY AKERS
FARIHA KABIR                                 Trial Attorney
Office of Assistant Chief Counsel            Commercial Litigation Branch
International Trade Litigation               Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection           P.O. Box 480, Ben Franklin Station
                                             Washington, D.C. 20044
                                             Telephone: (202) 353-0521
                                             Attorneys for Defendant United States

Dated: June 8, 2022

14

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. MARK A. BARNETT, CHIEF JUDGE

_____
                                                        )
RIMCO, INC.,                                            )
                                                        )
                    Plaintiff,                          )
                                                        )
            v.                                          )          Court No. 21-00537
                                                        )
UNITED STATES OF AMERICA,                               )
                                                        )
                    Defendant.                          )
_____)

## **CERTIFICATE OF COMPLIANCE**

I, BEVERLY A. FARRELL, a Senior Trial Attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, for Failure to State a Claim, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 3,831 words.

                                        /s/ Beverly A. Farrell
                                        Beverly A. Farrell