Slip Op. 22-79

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| RIMCO, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Before: Mark A. Barnett, Chief Judge <br> Court No. 21-00537 |

## OPINION AND ORDER

[Dismissing Rimco, Inc.'s challenge to U.S. Customs and Border Protection's assessment of countervailing and antidumping duties on entries of certain imported steel wheels from the People's Republic of China for lack of subject-matter jurisdiction.]

Dated: July 8, 2022

John M. Peterson, Neville Peterson LLP, of New York, NY, argued for Plaintiff Rimco, Inc. With him on the brief were Richard F. O'Neill and Patrick B. Klein.

Beverly A. Farrell, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-In-Charge, International Trade Field Office, Claudia Burke, Assistant Director, and Ashley Akers, Trial Attorney. Of counsel on the brief were Ian McInerney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, and Yelena Slepak and Fariha Kabir, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Nicholas J. Birch and Roger B. Schagrin, Schagrin Associates, of Washington, DC, for Proposed Defendant-Intervenor, Accuride Corporation.

Barnett, Chief Judge: In this matter, Plaintiff Rimco, Inc. ("Plaintiff" or "Rimco") seeks to challenge the constitutionality of United States Customs and Border Protection's ("CBP") assessment of countervailing and antidumping duties on entries of

certain steel wheels from the People's Republic of China ("China"). *See* Compl., ECF No. 2. Relevant here, Defendant United States ("Defendant" or "the Government") moves to dismiss Rimco's complaint for lack of subject-matter jurisdiction pursuant to United States Court of International Trade ("USCIT") Rule 12(b)(1). Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted ("Mot. to Dismiss"), ECF No. 32; Def.'s Reply Mem. of Law in Supp. of its [Mot. to Dismiss], ECF No. 43. [1] Rimco opposes the motion. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp."), ECF No. 38.

　　　Also before the court are (1) a motion to intervene filed by proposed Defendant-Intervenor Accuride Corporation ("Accuride"), Mot. to Intervene, ECF No. 14; (2) Accuride's amended motion to amend its motion to intervene, Am. Mot. to Amend Mot. to Intervene, ECF No. 25; (3) Accuride's proposed response in support of Defendant's motion to dismiss, Proposed Resp. to Def.'s Mot. to Dismiss, ECF No. 37; and (4) Plaintiff's motion to strike the proposed response from the docket, Pl.'s Mot. for an Order Directing the Clerk to Remove ECF 37 from the Docket, ECF No. 39.

　　　As discussed below, the court grants Defendant's motion to dismiss. Accordingly, the court denies, as moot, Accuride's motion to intervene and amended motion to amend the motion to intervene and declines to consider Accuride's proposed

---

[1] Defendant also argues that Rimco has failed to state a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(6). Because the court dismisses the case for lack of subject-matter jurisdiction, it need not address the parties' arguments regarding the alleged failure to state a claim.

response in support of the motion to dismiss. The court further denies, as moot, Rimco's motion to strike Accuride's proposed response.

## BACKGROUND

On March 28, 2019, the U.S. Department of Commerce ("Commerce") published the final countervailing and antidumping duty determinations on certain steel wheels from China. *See generally Certain Steel Wheels From the People's Republic of China*, 84 Fed. Reg. 11,744 (Dep't Commerce Mar. 28, 2019) (final aff. countervailing duty determination) ("*Final CVD Determination*"); *Certain Steel Wheels From the People's Republic of China*, 84 Fed. Reg. 11,746 (Dep't Commerce Mar. 28, 2019) (final determination of sales at less-than-fair-value) ("*Final AD Determination*"). No respondents participated in the antidumping duty investigation; consequently, Commerce determined only a China-wide entity rate of 231.70 percent. *See Final AD Determination*, 84 Fed. Reg. at 11,747. In the countervailing duty investigation, Commerce established individual rates for two companies based on total adverse facts available and an all-others rate of 457.10 percent. *See Final CVD Determination*, 84 Fed. Reg. at 11,745; *see generally* 19 U.S.C. § 1677e(b) (governing use of adverse inferences). Commerce published both the antidumping duty order ("AD Order") and countervailing duty order ("CVD Order") on May 24, 2019. *Certain Steel Wheels From the People's Republic of China*, 84 Fed. Reg. 24,098 (Dep't Commerce May 24, 2019) (antidumping and countervailing duty orders).

On May 1, 2020, Commerce published a notice of opportunity to request an administrative review of the countervailing and antidumping duty orders for the periods

August 31, 2018, through December 31, 2019, and October 30, 2018, through April 30, 2020, respectively.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Review*, 85 Fed. Reg. 25,394, 25,396 (Dep't Commerce May 1, 2020) ("*Opportunity Notice*").  The *Opportunity Notice* explained that interested parties (which includes importers), had the opportunity to participate in administrative reviews to ensure that entries were liquidated at the proper rate.  *See id*. at 25,397; *see also Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties*, 76 Fed. Reg. 65,694, 65,695 (Dep't Commerce Oct. 24, 2011).

      Neither Rimco nor any other interested party requested an administrative review of the transactions covered by the respective periods of review.  Compl. ¶¶ 17, 28.  Having received no review requests, Commerce issued liquidation instructions directing CBP to liquidate entries of steel wheels subject to the CVD Order and AD Order.  *Id.* ¶¶ 18, 29.  Consistent with the *Final CVD Determination* and *Final AD Determination*, the instructions directed CBP to liquidate entries subject to the CVD Order at 457.10 percent and entries subject to the AD Order at 231.70 percent.  *See* Compl. 18–29.  CBP liquidated seven entries of Rimco's imported merchandise at the rates provided for in Commerce's liquidation instructions.  *See id*.

      On March 16, 2021, Rimco filed a protest challenging CBP's assessment of antidumping and countervailing duties on these entries.  *See* Protests and Entries at 1, 4–22.  CBP denied the protest on March 30, 2021, explaining that "19 U.S.C. [§] 1514

does not authorize protests or petitions filed against Commerce calculations or findings" and that "[p]rotest must be filed with Commerce." Protests and Entries at 2.

Rimco then commenced this action, alleging that CBP's assessment of countervailing and antidumping duties at rates of 457.10 percent and 231.70 percent, respectively, constituted "excessive fines" in violation of the Eighth Amendment to the U.S. Constitution. Compl. ¶¶ 1, 46–48.

## STANDARD OF REVIEW

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Plaintiff bears the burden of establishing subject-matter jurisdiction. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

Here, Rimco alleges jurisdiction pursuant to 28 U.S.C. § 1581(a) or, alternatively, 28 U.S.C. § 1581(i). Compl. ¶¶ 2–3. Section 1581(a) grants the court jurisdiction to review denied protests by CBP. When a plaintiff asserts section 1581(i) jurisdiction, it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate." *Erwin Hymer Group N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citation omitted). Additionally, because the pending motion to dismiss rests on the absence of jurisdiction pursuant to section 1581(a) and the availability of jurisdiction pursuant to section 1581(c), thereby challenging the existence of section 1581(i) jurisdiction, "the factual allegations in the complaint are not controlling and only

uncontroverted factual allegations are accepted as true." *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

DISCUSSION

### I.   Subject-Matter Jurisdiction

The USCIT, like all federal courts, is a "court[] of limited jurisdiction marked out by Congress." *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992) (quoting *Aldinger v. Howard*, 427 U.S. 1, 15 (1976)).  The court's jurisdiction is governed by 28 U.S.C. § 1581, *et seq*.  *See id.*

Relevant here, section 1581(a) grants the court jurisdiction to review a protest denied pursuant to 19 U.S.C. § 1515.  28 U.S.C. § 1581(a).  Section 1581(c) grants the court jurisdiction to review Commerce determinations in countervailing and antidumping duty proceedings commenced in accordance with 19 U.S.C. § 1516a.  28 U.S.C. § 1581(c).  Section 1581(i) grants the court jurisdiction to entertain "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for-- . . . (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and "(D) administration and enforcement with respect to the matters referred to in paragraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section."  28 U.S.C. § 1581(i)(1)(B), (D).  Section 1581(i) also expressly excludes jurisdiction over antidumping and countervailing duty determinations reviewable by the court pursuant to 19 U.S.C. § 1516a(a).  *Id.* § 1581(i)(2)(A).

"Section 1581(i) embodies a 'residual' grant of jurisdiction[] and may not be invoked when jurisdiction under another subsection of [section] 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citation omitted). The scope of the court's jurisdiction pursuant to 28 U.S.C. § 1581(i) is "strictly limited." *Erwin Hymer*, 930 F.3d at 1374 (citation omitted). Otherwise, the court's jurisdiction under subsection (i) would "threaten to swallow the specific grants of jurisdiction contained within the other subsections." *Id*. (citation omitted). "An importer may not simply 'elect to proceed under section 1581(i) without having first availed [itself] of the remedy provided by section 1581(c).'" *Wanxiang America Corp. v. United States*, 12 F.4th, 1374 (Fed. Cir. 2021) (citing *Sunpreme*, 892 F.3d at 1193); *see also* 28 U.S.C. 1581(i) (expressly excluding antidumping and countervailing duty determinations that are reviewable by the court under 19 U.S.C. § 1516a(a) from section 1581(i) jurisdiction).

### A. The Availability of Jurisdiction Pursuant to Section 1581(a)

The Government contends that the court lacks jurisdiction pursuant to section 1581(a) to hear Rimco's claim "because CBP did not make a protestable decision with respect to either the countervailing or antidumping rate applied to the imported merchandise." Mot. to Dismiss at 8. The liquidation is not a protestable decision, the Government contends, because "CBP does not possess any discretion" when liquidating "entries pursuant to Commerce's liquidation instructions." *Id*. at 9.

Rimco responds that the court has subject-matter jurisdiction pursuant to section 1581(a) because "CBP made a protestable decision" by liquidating Rimco's entries. Pl.'s Resp. at 7; *see also id*. at 5, 7–10. Rimco also contends that its Eighth Amendment claim "could not have been raised before Commerce or in an action brought" pursuant to section 1581(c) because, "in the absence of liquidation," it had "suffered no injury" and its claim would not have been ripe. *Id*. at 7; *see also id.* at 10–12.

Pursuant to section 1581(a), this court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." 28 U.S.C. § 1581(a). Section 1515 governs CBP's review of protests filed under 19 U.S.C. § 1514. 19 U.S.C. § 1515(a). Section 1514(a), in turn, sets forth the exclusive list of CBP decisions that are subject to protest. 19 U.S.C. § 1514(a)(1)–(7). The introduction to section 1514(a) begins, however, by excepting certain determinations from its purview, most notably, antidumping and countervailing duty determinations reviewable pursuant to 19 U.S.C. § 1516a as referenced in subsection 1514(b).

This distinction between protestable determinations by CBP and antidumping and countervailing duty determinations by Commerce has long been recognized in both the statute and judicial precedent. *See* 19 U.S.C. § 1514(a)–(b); *see also Mitsubishi Elec. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed Cir. 1994); *American Nat'l Fire Ins. Co. v. United States*, 30 CIT 931, 939–940, 441 F. Supp. 2d 1275, 1285 (2006). "[I]f [CBP's] underlying decision does not relate to any of the[] seven categories"

Court No. 21-00537                                                                                                                                                                   Page 9

enumerated in section 1514(a), "the court may not exercise [section] 1581(a) jurisdiction over an action contesting [CBP's] denial of a protest filed against that decision." *American Nat'l Fire Ins.*, 30 CIT at 940, 441 F. Supp 2d at 1285. Moreover, "[s]ection 1514(a) does not embrace decisions by other agencies." *Mitsubishi*, 44 F.3d at 976. Thus, section 1514(a) and (b), read together, "exclude antidumping [and countervailing] determinations from the list of matters that parties may protest to [CBP]." *Id*.

In this action, Rimco challenges CBP's denial of its protest of the agency's liquidation of certain entries of Rimco's imported merchandise. *See* Compl. ¶¶ 18, 29. Rimco contends that 19 U.S.C. § 1500 "mandates that CBP make a 'decision'" with respect to every entry.[2] Pl.'s Resp. at 7. This contention is without merit.

It is well settled that in liquidating entries subject to countervailing and antidumping duties, CBP simply "follows Commerce's instructions"—its role is "merely ministerial." *Mitsubishi*, 44 F.3d at 977. In other words, because CBP lacks discretion when it liquidates entries pursuant to Commerce's liquidation instructions, it "does not make any section 1514 . . . 'decisions.'" *See id*; *cf. U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997), *aff'd*, *United States v. United States Shoe Corp.*, 523 U.S. 360 (1998) ("Typically, 'decisions' of [CBP] are substantive determinations

---

[2] While Rimco does not specifically address the provision in section 1500 under which CBP made a protestable decision, it appears that it is referring to section 1500(b), whereby CBP is to "fix the final classification and rate of duty applicable to such merchandise." 19 U.S.C. § 1500(b); *see also* Pl.'s Resp. at 18 ("[Pursuant to] 19 U.S.C. § 1500, CBP is required to determine the rate and amount of duty applicable to an entry of imported merchandise, and render a decision regarding same.").

involving the application of pertinent law and precedent to a set of facts, such as tariff classification and applicable rate of duty.").

Despite this issue being well-settled law, Rimco contends that "[i]t is of no moment that . . . CBP acted in a ministerial capacity by following [Commerce's] directions." Pl.'s Resp. at 6. Rimco cites *Wirtgen Am. v. United States*, 44 CIT __, 437 F. Supp. 3d 1302 (2020), for the proposition that CBP can make protestable decisions even when acting pursuant to directions from another agency, in that case, the U.S. International Trade Commission ("ITC"). *See id. Wirtgen,* however, is inapposite. *Wirtgen* involved a challenge to CBP's decision to exclude merchandise from entry pursuant to an exclusion order issued by the ITC. *Wirtgen*, 437 F. Supp. 3d at 1304–05. The defendant in *Wirtgen* argued that CBP was acting ministerially because it simply implemented the ITC exclusion order. *Id*. at 1306. The court, however, found that the plaintiff had pleaded sufficient facts according to which CBP had interpreted the ITC's exclusion order to find that the plaintiff's merchandise was subject to that order. *Id*. at 1307. Here, no comparable interpretation was made by CBP. Instead, as described by the *Mitsubishi* court, CBP's role was merely ministerial in assessing the antidumping and countervailing duties based on the instructions received from Commerce. *See* Compl. ¶¶ 18, 29.

Rimco also relies on *Swisher International Inc. v. United States*, 205 F.3d 1358, (Fed. Cir. 2000), for the proposition that a constitutional challenge to fees levied by CBP may be brought under the court's section 1581(a) jurisdiction following a protest. *See* Pl.'s Resp. at 9, 15. In *Swisher,* however, the court found that the denial of a refund of

the Harbor Maintenance Tax constituted a "decision as to a charge or exaction" within the meaning of 19 U.S.C. § 1514(a)(3). 205 F.3d at 1366. By contrast, in this case, Rimco disregards the fact that the statute expressly excludes antidumping and countervailing duty determinations from the list of protestable decisions.

In sum, because CBP's liquidation of the entries at issue was not a protestable decision, the court does not possess jurisdiction to hear this claim pursuant to section 1581(a).

### B. The Availability of Jurisdiction Pursuant to Section 1581(i)

The Government argues that jurisdiction pursuant to section 1581(i) is unavailable in this case because jurisdiction pursuant to section 1581(c) would have been available had Rimco requested an administrative review of Rimco's imports by Commerce. *See* Mot. to Dismiss at 10. The Government argues that because Rimco was an "interested party" as defined by 19 U.S.C. § 1677(9), Rimco could have requested an administrative review to address the level and constitutionality of the countervailing and antidumping duty rates assessed against its imports. *See id.* at 11. Thus, according to the Government, section 1581(c) serves as "the only valid basis for jurisdiction." *Id.* at 13. The Government also argues that "Rimco has not established or even alleged . . . that the potential remedy provided under section 1581(c) is manifestly inadequate." *Id.* at 11.

Rimco argues that, should the court not find jurisdiction pursuant to 28 U.S.C. § 1581(a), the court possesses residual jurisdiction under section 1581(i) because the "action relates to the administration and enforcement of matters covered by [the court's

other bases for jurisdiction].'" Pl.'s Resp. at 19–20.  Rimco argues that section 1581(c) jurisdiction was not available because "[n]o unconstitutional injury . . . existed until CBP exacted monies from Rimco" and "Commerce [was] not competent to judge the constitutionality of its actions."  *Id*. at 20.

It is well settled that "[a] party may not expand a court's jurisdiction by creative pleading."  *Sunpreme*, 892 F.3d at 1193 (quoting *Norsk Hydro*, 472 F.3d at 1355).  Instead, the court must "look to the true nature of the action . . . in determining jurisdiction of the appeal."  *Id*. (quoting same).  The "true nature" of Rimco's action is a challenge to the assessment of countervailing and antidumping duties in accordance with the rates established by Commerce and communicated to CBP in the liquidation instructions.  *See* Compl. ¶¶ 1, 48.  Thus, the court lacks jurisdiction pursuant to section 1581(i) because jurisdiction pursuant to section 1581(c) was available and would not have been manifestly inadequate.

Rimco, as an importer of subject merchandise, was an interested party that could have requested administrative reviews of the countervailing and antidumping duty rates on its imports.  *See* 19 U.S.C. § 1677(9); 19 C.F.R. § 351.213(b); *Opportunity Notice*, 85 Fed. Reg. at 25,396–97.  In such administrative reviews, Rimco could have challenged the constitutionality of the rates selected by Commerce.  Had Commerce disagreed with Rimco's assertions that the antidumping and countervailing duties were unconstitutional under the Eighth Amendment, Rimco could have brought an action in this court pursuant to section 1581(c) challenging one or both administrative reviews.  *See* 19 U.S.C. § 1516a; 28 U.S.C. § 1581(c).  Rimco, however, declined to request an

administrative review and, pursuant to 19 C.F.R. § 351.212(c)(1), Commerce issued instructions to CBP to liquidate the entries at the antidumping and countervailing duty rates in effect at the time of entry. Compl. ¶¶ 18, 29.

For Rimco to invoke the court's section 1581(i) jurisdiction, it must show that any remedy available under the court's section 1581(c) jurisdiction would have been manifestly inadequate. *See Sunpreme*, 892 F.3d at 1191. For a remedy to be manifestly inadequate, it must be an "exercise in futility, or 'incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Id*.

Rimco contends that the constitutionality of the rates could not have been addressed by Commerce or the court pursuant to its section 1581(c) jurisdiction. *See* Pl.'s Resp. at 10–12. Rimco argues that Commerce does not have the capacity to address such claims and that Rimco would lack standing to bring an Eighth Amendment claim prior to liquidation. Pl.'s Resp. at 11–12. Both arguments fail.

First, Rimco's undeveloped assertion that Commerce lacks the capacity to consider its Eighth Amendment argument is unfounded. It has long been recognized that Commerce is the "master" of the countervailing and antidumping duty laws and was entrusted by Congress with determining the appropriate countervailing and antidumping duties. S*ee Consumer Prods. Div., SCM Corp. v. Silver Reed Am., Inc.*, 753 F.2d 1033, 1039 (Fed. Cir. 1985). Assuming that Rimco's foreign producer(s) or exporter(s) would decline to participate in such an administrative review, had Rimco requested one, Commerce has a great deal of discretion in selecting the appropriate rate to use when

making an adverse inference pursuant to 19 U.S.C. § 1677e. In particular, subsection (b)(2) lists four broad categories of information upon which Commerce may draw in making an adverse inference:

> An adverse inference under paragraph (1)(A) may include reliance on information derived from--
> (A) the petition,
> (B) a final determination in the investigation under this subtitle,
> (C) any previous review under section 1675 of this title or determination under section 1675b of this title, or
> (D) any other information placed on the record.

19 U.S.C. § 1677e(b)(2). Nothing in this provision, or any other provision regarding Commerce's selection of an adverse facts available rate, suggests that Commerce would not be able to account for any objections reasonably founded in the Eighth Amendment when making any adverse inference. This is particularly true in this case when Rimco expressly directs its challenge to the rates selected by Commerce and not the constitutionality of the statute.

Rimco suggests that the language of 19 U.S.C. § 1677e(d)(3) is relevant to its Eighth Amendment claim. *See* Pl.'s Resp. at 2–3, 11, 19. That subsection clarifies that in using an adverse inference in selecting from facts otherwise available Commerce is not required:

> (A) to estimate what the countervailable subsidy rate or dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated; or
> (B) to demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party.

Court No. 21-00537                                                                                                    Page 15

19 U.S.C. § 1677e(d)(3)(A)–(B).  Without deciding the merits of Rimco's position, nothing about this language suggests that Commerce would be incapable of considering the merits of an Eighth Amendment argument in determining how to exercise its discretion in selecting information for purposes of making an adverse inference.  To the contrary, the provision simply clarifies the absence of certain requirements.

Rimco acknowledges that "whe[n] the constitutional challenge is to an administrative . . . action," it is "appropriate to encourage 'further factual development within the agency.'"  Pl.'s Resp. at 17 (citing *Nufarm Am.'s Inc. v. United States*, 29 CIT 1317, 1327, 398 F. Supp. 2d 1338, 1348 (2005)).  While Rimco makes this argument to suggest that its protest to CBP constituted the appropriate avenue to judicial review, this argument more appropriately supports requiring Rimco to raise this issue before Commerce, the agency that determined the allegedly unconstitutional assessment rates.  Consideration by Commerce would have provided the court with a record basis for reviewing the rates and a context in which to evaluate whether they were, in fact, "excessive."  As Plaintiff recognized in its complaint, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality[,]" *United States v. Bajakajian*, 524 U.S. 321, 334 (1997), and that "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the . . . offense, it is unconstitutional," *id.* at 337.  Antidumping and countervailing duties are designed to offset sales at less than fair value and the effects of unfair subsidization, respectively.

Court No. 21-00537                                                                                                                  Page 16

Without a record developed by Commerce, it would be impossible for the court to evaluate whether the duties were unconstitutionally disproportionate.

Here, Rimco has not demonstrated that pursuing its claims through an administrative review would have been an exercise in futility, useless, or incapable of producing the result it seeks. If Rimco established that Commerce's selected rates violated the Eighth Amendment, Commerce could have exercised its ample discretion to modify the information upon which it relied in making its adverse inference. *See* 19 U.S.C. § 1677e(b); *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1338–39 (Fed. Cir. 2002) ("In the case of uncooperative respondents, the discretion granted by [19 U.S.C. § 1677e(b)] appears to be particularly great, allowing Commerce to select among an enumeration of secondary sources as a basis for its adverse factual inferences*."); see also Smith-Corona Group v. United States*, 713 F.2d 1568, 1571 (Fed. Cir. 1983) ("The Secretary has broad discretion in executing the [antidumping and countervailing duty] law.").

Rimco's argument that it would lack standing to challenge such a determination pursuant to 1581(c) is equally unavailing. In order to have standing, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992); *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1364 (Fed. Cir. 2019). Rimco offers no persuasive reason to treat this case differently from other cases

arising under section 1581(c) based on the constitutional nature of its claim.  Standing does not require past injury.  *See Shenyang Yuanda*, 918 F.3d at 1364 ("For such standing to exist, a plaintiff must have already suffered *or be imminently threatened with* a concrete, particularized injury . . . .") (emphasis added); *cf. Barber v. Charter Township of Springfield*, 31 F.4th 382, 389–393 (6th Cir. 2022) (holding that plaintiff had standing to bring a Fifth Amendment takings claim despite plaintiff's property having not yet been taken).  As is true in any case arising under section 1581(c), liquidation would not have occurred at the time Commerce makes its determination, but is sufficiently imminent for standing purposes and, once Commerce issues liquidation instructions, CBP will have no discretion to alter or disregard those instructions.[3]  *See Mitsubishi*, 44

---

[3] The court's jurisprudence with respect to the determination and assessment of antidumping and countervailing duties demonstrates that parties are entitled to adjudicate their claims concerning the determination of those duties prior to liquidation—and indeed must or else they risk losing their claims to mootness.  *See Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983) (holding that the USCIT erred in refusing to grant plaintiff a preliminary injunction because "the statutory scheme has no provision permitting reliquidation" even when a plaintiff is successful on the merits); *SKF USA Inc. v. United States*, 28 CIT 170, 186, 316 F. Supp. 2d 1322, 1337 (2004) ("Once liquidation occurs, judicial review is ineffective and thus, '[a]llowing the liquidation to proceed would be tantamount to denial of the opportunity to challenge administrative determinations.'") (quoting *PPG Indus., Inc. v. United States*, 11 CIT 5, 7 (1987)).  If Rimco's argument were to prevail, the carefully crafted statutory scheme would be turned on its head.  Congress has provided interested parties with an avenue for challenging countervailing and antidumping duty rates at the administrative level by participation in administrative reviews and in the courts through section 1581(c) jurisdiction.  Endorsing Rimco's approach of protesting the assessment of antidumping and countervailing duties could convert *every* challenge to a Commerce determination to an action under section 1581(a), rendering the court's section 1581(c) jurisdiction superfluous, contrary to congressional intent.  *See* Customs Courts Act of 1980, H.R. Rep. No. 96-1235, at 1 (1980) ("It is the intent of the committee that importers . . . not utilize proposed section 1581(a) to circumvent the exclusive method of judicial review of

F.3d at 977.  Furthermore, the injury would be fairly traceable to Commerce as the agency which determined the allegedly unconstitutional rates.  Finally, the court could grant relief to redress or prevent a plaintiff's injury by remanding the issue to Commerce to redetermine any rates found to be unconstitutional.[4]

Because the "true nature" of this dispute is a challenge to the countervailing and antidumping duty rates set by Commerce in the respective orders—rates which directly informed the liquidation instructions—Rimco could have raised its constitutional claims by requesting an administrative review and in any subsequent challenge to the final results of such administrative review.  Rimco failed to pursue the administrative avenue available to it and thereby missed its opportunity to challenge the rates set by Commerce.  It cannot avoid the consequences of that failure through the exercise of the court's section 1581(i) jurisdiction.

II. **Moot Issues**

Also before the court are (1) Accuride's motion to intervene; (2) Accuride's amended motion to amend its motion to intervene; and (3) Plaintiff's motion to strike the proposed response.  Because the court grants the Government's motion to dismiss,

---

an antidumping and countervailing duty determination listed in section 516A of the Tariff Act of 1930 . . . .").

[4] In *KYD, Inc. v. United States*, 36 CIT 676, 836 F. Supp. 2d 1410 (2012), the plaintiff sought to raise an Eighth Amendment claim challenging an antidumping duty rate based on adverse facts available in a case brought pursuant to the court's section 1581(c) jurisdiction.  In that case, however, the court ruled that because plaintiff had not raised its Eighth Amendment claim in its post-remand brief, its claim had been waived.  36 CIT at 678–79, 836 F. Supp. 2d at 1413–14.  While this case is not binding on the court, it supports the proposition that parties may raise Eighth Amendment challenges to Commerce determinations pursuant to section 1581(c).

Court No. 21-00537	Page 19

these motions are denied as moot.  *See TR Int'l Trading Co. v. United States*, 44 CIT __, __, 433 F. Supp. 3d 1329, 1346 (granting defendant's motion to dismiss for lack of subject-matter jurisdiction and denying proposed defendant-intervenor's motion to intervene as moot).  Because the court denies Accuride's motion to intervene, the court does not consider its proposed response.

### CONCLUSION AND ORDER

For the foregoing reasons, the court **GRANTS** Defendant's motion to dismiss for lack of jurisdiction.  Because the court lacks jurisdiction, proposed Defendant-Intervenor's motion to intervene and amended motion to amend the motion to intervene, and Plaintiff's motion to strike the proposed response are **DENIED AS MOOT**.  Judgment will enter accordingly.

/s/     Mark A. Barnett     
Mark A. Barnett, Chief Judge

Dated: July 8, 2022     
　　　New York, New York